C. F. LUCE *et al.*, Appellants, v. W. H. FENSLER *et al.*, Appellees.

**Relocation of County Seat:** POWERS OF BOARD OF SUPERVISORS: FRAUD: JURISDICTION OF COURT OF EQUITY. Under sections 281 to 287 of the Code, the board of supervisors of a county is constituted a special tribunal to determine whether a petition for the relocation of a county seat is signed by the requisite number of legal voters to authorize the submission of the question of such relocation to a vote of the people, and a court of equity is without jurisdiction to prevent, by injunction, action by the board of supervisors upon a petition, which, it is alleged, contains a large number of names of persons who are not voters; the jurisdiction of the board to determine the sufficiency of the petition in such case being exclusive. KINNE and GIVEN, Justices, *dissenting*.

*Appeal from Harrison District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, MAY 25, 1892.

ACTION to enjoin proceedings on a petition to the board of supervisors of Harrison county, asking the

relocation of its county seat. The facts are stated in the opinion.—*Affirmed.*

*L. R. Bolter & Sons, H. H. Roadifer,* and *J. W. Barnhart,* for appellants.

*Harl & McCabe, J. S. Dewell* and *Chas. MacKenzie,* for appellees.

ROBINSON, C. J.—On the first day of June, 1891, a petition was presented to the board of supervisors of Harrison county, asking that the question of removing the county seat from Logan, and relocating it at Missouri Valley be submitted to a vote of the citizens of that county at the next general election. At the same time a remonstrance against relocation was presented. Pending a consideration of the petition and remonstrance and accompanying proofs by the board of supervisors, and before it had made any finding or announced any conclusion, the plaintiffs presented their petition in this action to a judge of the district court in and for Harrison county, asking that further proceedings on the petition for a relocation of the county seat be enjoined. The plaintiffs are citizens and taxpayers of Harrison county, who are interested in the county seat and opposed to the proposed relocation. The defendants are members of the board of supervisors, and citizens who petitioned for the relocation. The grounds alleged for the relief demanded were that the petition was fraudulent, containing the names of many fictitious persons, or of persons who were minors, or for other reason not entitled to vote; that a member of the board of supervisors had full knowledge of the fraud, and was conniving with persons interested in the proposed relocation to have the order desired by them made, and that the board of supervisors, on account of its limited jurisdiction, had not the power to investigate the fraudulent character of the petition. A temporary writ of

injunction was granted without notice. At a subsequent time the parties to the action appeared before the judge, who had ordered the temporary writ, at chambers. The defendants filed answers and a motion to dissolve the injunction, sustained by affidavits. Counter affidavits and affidavits in rebuttal were filed. The judge found that the allegations of fraud made against the petition presented to the board of supervisors were so strongly supported that, if authorized by law, the temporary injunction should be continued until the final hearing, and overruled the motion to dissolve, so far as it was based upon any issue of fact; but he further found that a court of equity will not interfere by injunction to restrain a board of [supervisors from considering or acting upon a petition for the removal of a county seat and sustained the motion to dissolve, so far as it was based upon a want of jurisdiction. The temporary injunction was accordingly dissolved, and from that order the plaintiffs appealed. Afterwards the defendants appealed from so much of the order as overruled the motion to dissolve on the issues of fact. After the plaintiffs had taken their appeal they applied to a member of this court for an order staying proceedings on the petition to the board of supervisors pending the appeal, and the order was granted. The defendants afterwards appeared before the judge who granted that order, and moved that it be vacated. The motion was overruled, but with leave to the defendants to renew the motion in this court. They have renewed the motion, and the case is submitted to us on that motion, and on the appeals from the order of the district judge to which we have referred.

I. The provisions of the Code in regard to the relocation of county seats, so far as material to a determination of the questions presented to us for consideration, are as follows:

"Section 281. Whenever the citizens of any county desire a relocation of their county seat they may petition their board of supervisors respecting the same at any regular session.

"Section 282. Such petition shall designate the place at which the petitioners desire to have the county seat relocated, and shall be signed by none but legal voters of said county, and shall be accompanied by affidavits sufficient to satisfy said board that the signers are all legal voters of said county and that the signatures on said petition are all genuine.

"Section 283. Remonstrances signed by legal voters of the county only, and verified in like manner as the petition, may also be presented to the board. If the same persons petition and remonstrate, they shall be counted only on the remonstrance; and if a greater number of legal voters remonstrate against the relocation than petition for it, no election shall be ordered.

"Section 284. Sixty days' notice of the presentation of such petition shall be given. * * *

"Section 285. Upon the presentation of such petition, signed by at least one-half of all the legal voters in the county, as shown by the last preceding census, if the notice hereinbefore prescribed shall have been given, the board shall order that at the next general election a vote shall be taken between said place and the existing county seat. * * *

"Section 287. If the point designated in the petition obtain a majority of all the votes cast, the board of supervisors shall make a record thereof, and declare the same to be the county seat of said county, and shall remove the records and documents thereto as early as practicable thereafter."

The plaintiffs contend that the total number of voters in Harrison county, as shown by the last census, was five thousand, one hundred and thirty-seven; that the total number of voters in the county in June, 1891,

did not exceed five thousand and four hundred; that the petition for relocation purports to be signed by five thousand and twenty-six voters; that of the voters of the county two thousand, four hundred and forty-nine did not sign the petition, and that of those who signed it one thousand and twenty-eight also signed the remonstrance, and therefore should not be counted on the petition; that the remonstrance was signed by three thousand, five hundred and forty voters. There is evidence which tends strongly to support these claims. If they are well founded, it is manifest that a gross fraud was attempted to be perpetrated upon the board of supervisors and the people of Harrison county by means of the petition in question, for in that case the remonstrance was signed by nearly one thousand voters more than one-half of all those in the county, but still lacked nearly five hundred signatures to defeat a submission on the face of the papers. Or, stating the case differently, if the facts are as claimed by the plaintiffs, the petition contains the names of more than two thousand persons who were not voters of the county when it was presented to the board.

It was held in *Herrick v. Carpenter*, 54 Iowa, 340, that the decision of the board of supervisors in regard to the sufficiency of the petition to authorize an order submitting the question of relocation to a vote of the people must be based upon the affidavits filed with the petition and remonstrance, and possibly upon matters within the knowledge of the board. It is insisted by the appellants that under the doctrine of that case the board has no power to investigate the frauds alleged, and render a decision according to the real merits of the case; therefore, that the power must exist in courts of equity to investigate the facts, purge the petition of fraudulent names and render such a decree as would do justice to all the parties in interest. The case, as presented by the appellants, certainly contains much to

appeal to the conscience of a court of chancery. But we are met with the objection that the law has constituted the board of supervisors a special tribunal to determine whether the petition has been signed by the requisite number of legal voters to authorize the submission of the question of relocation to a vote, and that its jurisdiction for that purpose is exclusive. That the statute vests in the board power to determine the sufficiency of the petition is clear; and it is equally clear, under the rule announced in *Herrick v. Carpenter*, 54 Iowa, 340, that the board has not power to investigate fully such issues of fraud as are tendered in this case. In the absence of constitutional restrictions, the legislature of the state has full power to provide the manner in which county seats shall be relocated. 4 American and English Encyclopedia of Law, 403; *Alexander v. People*, 7 Colo. 156; 2 Pac. Rep. 894. The only restriction on that power specified in the constitution of this state is that the general assembly shall not pass local or special laws "for locating or changing county seats." The location of a county seat neither confers rights nor creates obligations which would be violated by a subsequent relocation. *Newton v. Commissioners of Mahoning County*, 100 U. S. 548. It is clear that the general assembly of Iowa had power to provide for the relocation of the county seat by a general law, and to provide a special tribunal with exclusive authority to decide questions in regard to such relocation. That power is not questioned, but it is said that it has not been exercised, and that the board of supervisors has not the exclusive right to determine whether the petition is sufficient to require a vote upon the question of relocation. It is a general rule that where a statute creates a right, and provides the means for enforcing and protecting it, the means so provided are exclusive. *Dudley v. Mayhew*, 3 N. Y. 15; *Heiser v. Mayor*, 104 N. Y. 72, 9 N. E. Rep. 866; *Phillips v. Ash's Heirs*, 63 Ala.

418; *Chandler v. Hanna*, 73 Ala. 391; *Com. v. Leech*, 44 Pa. St. 332; Sedgwick on Statutory and Constitutional Law, 94. The rule is stated in section 399 as follows: "When a right is given by statute, and a specific remedy provided, or a new power and also the mean of executing it are therein granted, the power can be executed and the right vindicated in no other way than that prescribed by the act.   *   *   *"   The law governing the relocation of county seats is purely statutory. The board of supervisors is vested with the sole power to consider petitions for and remonstrances against relocation and determine their legal effect. *Baker v. Board*, 40 Iowa, 228. Courts of equity will not, as a rule, attempt to control the action of public officers, as boards of supervisors, when acting as a judicial tribunal on matters within their jurisdiction. 2 High on Injunctions, section 1311; *Hyatt v. Bates*, 40 N. Y. 165. And where they have jurisdiction they will not interfere with the proceedings of other tribunals also having jurisdiction, which have already assumed control of the subject-matter in dispute. 1 High on Injunctions, section 50.

There is nothing in the character of such proceedings as that which is sought to be controlled in this action to except them from the general rules. The action of the board in considering the petition and submitting the question of relocation to a vote of the people is preliminary in its nature and effect. The question of chief importance is finally determined by the voters of the county. The general assembly might have provided that no remonstrance should be considered, but that the board should act upon the petition alone, or it might have dispensed with the petition, and authorized the board to submit the question on its own motion, or it might have provided other means for submitting the question than those which now exist. But it has deemed it proper to require a petition signed

by one-half of the legal voters of the county as shown by the last preceding census, and has prescribed the evidence upon which the board may act. It may be that the provisions of the law are not adequate to prevent fraud, but the power of the general assembly to authorize a submission upon the showing prescribed is beyond question. In this case due notice of the presentation of the petition had been given, and the board of supervisors had jurisdiction to act upon the petition. It had not acted, but had the matter under consideration, when enjoined from proceeding further. It cannot be presumed that it would act illegally. If it be true that under the rule of *Herrick v. Carpenter* the proof by affidavit is such that the board must decide, contrary to the fact, that the petition is signed by the requisite number of legal voters, the district court would not, for that reason, be authorized to interfere by injunction in advance of its action. We do not, however, rest our conclusion solely on the ground that the board has not yet acted, for we are of the opinion that its action, if taken in good faith, will be final, and cannot be reviewed, nor its effect stayed by injunction. The board has exclusive jurisdiction of the matter, and so long as it acts within its jurisdiction, without fraud, the courts cannot interfere with it, nor set aside its action. The appellants refer to several decisions of this court as sustaining their claims, but none of them are in point. In *Rice v. Smith*, 9 Iowa, 570, a vote to relocate the county seat had been taken, and the question involved was the right of the county judge to erect an expensive public building which was required to be at the county seat, while the matter of location was in controversy. The question involved in *Sweatt v. Faville*, 23 Iowa, 326, was whether the county seat had been relocated, and arose under the Revision of 1860, and not under the present law. The question involved in this case was not considered in that. The case of

*Sinnett v. Moles*, 38 Iowa, 25, arose under a statute which provided for the voting of a tax in aid of the construction of a railway. The statute, the facts, and the principles involved are in many respects so unlike those in controversy in this action that we need not consider them further. The conclusions we have announced make the order of the district judge, so far as it overruled the motion to dissolve the injunction, of no effect, and for that reason it will not be further reviewed. The order suspending proceedings on the petition to relocate pending this appeal is vacated, and the order of the district judge dissolving the injunction is AFFIRMED.

KINNE, J. (*dissenting*).—I am unable to concur with the opinion of the majority of the court in the conclusion they reach in this case. I regret that the necessity for an immediate decision, owing to the important public interests involved, will prevent me from doing more than indicating very briefly the grounds of my dissent. The petitioners aver, in substance, that in June, 1891, when the petition for removal was presented to the board of supervisors, there were not to exceed five thousand, five hundred voters in Harrison county; that the petition for relocation appeared to be signed by five thousand and twenty-six voters of the county; that nearly two thousand, five hundred voters of the county did not sign the petition; that of those who did sign it over one thousand also signed the remonstrance, and hence could not be counted on the petition; that the remonstrance was signed by over three thousand, five hundred voters. It is conceded in the opinion that "there is evidence which tends strongly to support these claims," and that, if they are well founded, it is apparent that "a gross fraud was attempted to be perpetrated upon the board of supervisors and the people of Harrison county."

Accepting the allegations of the petition as true,—and the evidence strongly supports them,—and we have a case where the remonstrance is signed by nearly one thousand voters more than one-half of all the legal voters in the county, but still insufficient in numbers to prevent the submission "on the face of the papers." Conceding all the allegations of fraud to be true, as alleged in the petition, the opinion holds that there is under our law no relief; that, as it is the settled law of this state that the board of supervisors have no power to inquire into and investigate such frauds, and as they are by law vested with the power to order such elections, there is no power existing anywhere to investigate the alleged fraud and determine in such a case who are "legal voters." Code, section 282. The result of this holding is that, though the statute expressly provides that the petition for relocation shall be signed by "none but legal voters of said county," there is no way provided in a case like that at bar for determining whether or not any or all of the petitioners are "legal voters." Surely we are not justified in holding that it was the legislative intent that such a result should follow. There must exist somewhere power to examine into the question as to whether or not the petitioners are "legal voters." In no other way is it possible to give effect to the command of the law that "none but legal voters" shall sign the petition. This power must rest in a court of equity, which may, and in my judgment ought to, investigate such gross frauds, striking from the petition the names of all who are not "legal voters." The fact that such an investigation would be tedious, and perhaps expensive, is no reason for refusing relief, especially when such refusal closes the last avenue by means of which the most glaring frauds may be prevented, but invites the violation of the very statute which was enacted to prevent them.

Justice Given joins me in holding that the district court erred in dissolving the temporary injunction, and that the cause should be reversed for the errors above indicated.