Swartz *v.* Board, etc.

# SWARTZ *v.* BOARD OF COMMISSIONERS OF LAKE COUNTY.

[No. 19,173.    Filed February 27, 1902.]

158  141
168  100
f168  574
168  576
168  577

158  141
f169    2

158  141
171  264
f171  662

COURTS.—*Lake, etc., Superior Court.*—*Jurisdiction.*—The superior court for the counties of Lake, Porter and LaPorte established by the act of 1895 (Acts 1895, p. 210) is a legally created tribunal, whose jurisdiction under §9, as amended by the act of 1899 (Acts 1899, p. 564), is equal to that of the circuit courts of this State. *pp. 144, 145.*

SAME.—*Counties.*—*Construction of Court-House.*—Section 19 of the act of 1895 (Acts 1895, p. 210), as amended, creating a superior court for Lake, Porter and LaPorte counties, making it the duty of the board of commissioners of each county to provide a suitable and convenient place at the town or city fixed for holding the sessions of the court, authorizes the commissioners, if they deem proper, to purchase a site and erect thereon a suitable building at the expense of [the county for the use and purposes mentioned in the statute. *pp. 144–149.*

COUNTIES. — *Construction of Public Buildings.* — *County Council.* —The board of county commissioners is not the sole arbiter of the cost of a court-house to be constructed by the county, since the county reform law (Acts 1899, p. 343) vests in the county council the authority to make appropriations for the construction of public buildings and the purchase of real estate of the value of $1,000 and over. *pp. 149–151.*

CONSTITUTIONAL LAW. — *Counties.* — *Courts.* — The act of 1895 (Acts 1895, p. 210) creating a superior court for the counties of Lake, Porter and LaPorte is not violative of §19, article 4 of the Constitution providing that every act shall embrace but one subject and matters properly connected therewith, which subject shall be embraced in the title, in that no reference is made in the title to the provision of §19 thereof in reference to securing a place to hold court. *p. 151.*

SAME.—*Counties.*—*Courts.*—The amendment of §5 of the act of 1895 (Acts 1895, p. 210) creating a superior court for Lake, Porter and LaPorte counties, increasing the salaries of the clerks and sheriffs of such counties, if invalid as special or local legislation, does not render the entire act invalid, as such provision can be eliminated without affecting the operation of the law as a whole. *pp. 151, 152.*

SAME. — *Counties.* — *Removal of County Seat.* — The fact that citizens made donations of land or other means, under a statute making provision therefor, to secure the location of a county seat, would not, in a legal sense, constitute a contract, or preclude or estop the State from removing the county seat to a point elsewhere in the county, by subsequent legislation. *pp. 152–154.*

COUNTIES.—*Removal of County Seat.*—*Property Owners.*—*Dammum Absque Injuria.*—The location and removal of county seats are matters wholly within the power of the legislature, and no private property rights in the eye of the law are violated; if interests of individuals suffer thereby such interests must yield to the demand of public necessity and convenience, and such losses, if any, fall within the application of the maxim *damnum absque injuria.* *pp. 152–154.*

From Lake Circuit Court; *E. P. Hammond,* Special Judge. ·

Suit by Henry P. Swartz to enjoin the board of commissioners of Lake county from constructing a courthouse at the city of Hammond. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*J. Kopelke* and *J. B. Peterson,* for appellant.
*W. Johnston,* for appellee.

JORDAN, C. J.—By an act of the legislature of this State, passed in 1895, entitled, "An act to establish a superior court for the counties of Lake, Porter, and LaPorte, defining its authority and jurisdiction, providing for the appointment, election, commission, and compensation of the judge thereof, and for clerk and sheriff, compensation of same, and places and times of holding said court, and declaring an emergency," a superior court was created for the counties of Lake, Porter, and LaPorte. Acts 1895, p. 210. Section 5 of this statute provided that the clerk of the circuit court and the sheriff of the county of each respective county in which the court was held should attend the sittings thereof and discharge all of the duties pertaining to their respective offices, as they were required to do by law in the circuit court, and that they should be controlled in all things by the law pertaining to their government in the circuit court. When tested by the criterion provided under the terms of §6 of the act, it is evident that the legislature has fixed the city of Hammond, in Lake county, and the city of Michigan City in LaPorte county, as the place in each of these respective counties, instead of the county seat thereof, for holding the sessions of said court. By §9 the court,

created by the act in question, is invested with original and appellate jurisdiction concurrent with the circuit court in all civil actions, and in all criminal actions of the grade of misdemeanors, except in actions in which the title to real estate is involved and in probate matters. Section 19 of the act reads as follows: "The common council of the city or board of trustees of the town in the county of Lake where such court is held shall provide a convenient and suitable place for the holding of said superior court, and in the town or city herein provided. The common council of the city or the board of trustees of the town in the county of LaPorte where such court is held shall provide a convenient and suitable place for holding said superior court and in the town or city herein provided." This statute in respect to its principal provisions was held to be a valid exercise of legislative power in the appeal of *Woods* v. *McCay*, 144 Ind. 316, 33 L. R. A. 97.

By an amendatory act approved March 8, 1897 (Acts 1897, p. 236), §§5 and 9 were amended,—§5 to the extent of the following provision: "And the clerk and sheriff, as and for compensation for the services provided for in this act, shall receive $600 each per annum in addition to the salaries otherwise provided for said officers, which sum shall be payable out of the fees collected by them." Section 9 was amended to read as follows: "The said court shall have concurrent jurisdiction with the circuit courts of its respective counties in all cases at law and equity whatsoever, and in criminal cases, and actions for divorce, and in all other causes, matters and proceedings of which such circuit court now or may hereafter have jurisdiction except probate matters and cases involving the title to real estate."

By a subsequent statute enacted on March 7, 1899 (Acts 1899, p. 564), §§7, 15, 16, and 19 of the original act of 1895 were amended, and §§5 and 9 as amended by the act of 1897 were again amended. By this amendatory act of 1899, §19 of the original statute was amended to read as

follows: "The board of county commissioners of each of the respective counties mentioned in this act shall provide a suitable and convenient place for the holding of the said superior court, in their respective counties, and in the town or city herein provided; and they shall also respectively provide all such suitable and necessary places, and in such town or city, as are required by the officers of the said courts for the proper performance of their duties as such and for the preservation of the records of the said courts." The amendment made to §5 by the act of 1899 was to add the following provision: "And the prosecuting attorney of the judicial circuit in which each respective county is situate shall prosecute the pleas of the State in said superior court for their respective county or counties." Section 9 was by the same act amended so as to provide as follows:. "The said court shall have original, appellate and concurrent jurisdiction with the circuit court of its respective county in all cases and actions at law and in equity whatsoever; and in criminal cases and actions for divorce and in all matters of probate and the settlement of decedents' estates; and in all other causes, matters and proceedings of which such circuit court now has or may hereafter have jurisdiction."

Adhering, as we do, to the decision in *Woods* v. *McCay*, 144 Ind. 316, whereby, as previously stated, the validity of the original act of 1895 was upheld, so far at least as it pertained to the establishment of the court in controversy, and in fixing its jurisdiction as well as the several places in each of the respective counties where its sessions were to be held, it follows that this superior court is a legally created tribunal, whose jurisdiction, under §9 as amended by the act of 1899, is equal to that of the circuit courts of this State. Having reached this conclusion, we may proceed to examine and determine the several questions presented in this appeal. It appears that by virtue of §19 of the original act, as amended by the act of 1899, the board of commissioners of Lake county is proposing to construct a house or build-

ing at the city of Hammond, at the expense of the county, for the purpose of affording a suitable and convenient court-house in which the sessions of said superior court in Lake county may be held; and also to afford suitable and necessary office rooms in which the sheriff and clerk of the court may discharge their respective duties, and for the preservation of the court's records. To prevent the appellee herein, the board of commissioners, from carrying out the proposed construction and maintaining of such a house or building at the expense of the county for the purposes mentioned, appellant, a resident property owner of Crown Point, the county seat of Lake county, and a taxpayer of said county, commenced this action on September 18, 1899, to obtain an injunction against appellee. The complaint is in two paragraphs, the following being substantially the facts alleged in the first paragraph: Appellant, plaintiff below, is the owner of a certain lot in the town of Crown Point, which is situate opposite to the court-house and public square therein, and which real estate is a part of the lot, which in the year 1840 was owned by one Solon Robinson. The latter, along with others, donated to Lake county the site for the public buildings of the county at the county seat, and other property to aid in the construction thereof, and that by reason of such donations the county seat of Lake county was located at Crown Point, and has ever since been maintained at that town. Robinson and others also platted the town of Crown Point, marking on the plat the donations made and the lots reserved for themselves. A copy of the deed of donation together with the town plat is set out in the complaint. It is alleged that these things were done by virtue of a statute of 1824, the provisions of which, in part, are also set out. Persons thereafter, it appears, bought lots at Crown Point in the confidence of the location of the county seat as aforesaid, and paid larger sums therefor than they would otherwise have done; that this was also the case with the plaintiff

and his predecessors in title; that on his lot in question he conducts a drug store from which he derives additional value by reason of its location at the county seat at a point opposite the court-house. The complaint then proceeds to charge that the board of commissioners has contracted for certain real estate at the city of Hammond, which city is more than sixteen miles distant from Crown Point, upon which realty it proposes to erect a court-house for the use of the superior court. It is averred that the price to be paid for the said tract of land is $5,000, and that the expense which will be incurred in the construction of the court-house will be over $50,000, and that the defendant, the board of commissioners, propose to issue $50,000 of bonds of said county for the purpose of raising a building fund, and will purchase said real estate and construct the said building and pay for the same out of the funds of the county unless enjoined. That the said board of commissioners is assuming 'to act under an act of the General Assembly of 1899, which, it is charged, confers no such power, nor is said board invested by any act of the legislature with such authority; and, if said statute should be read or construed so as to confer such power on the board, it is necessarily void under the State Constitution; and it is further charged that, if the act in question or any other act should be so read or construed, they would be void under that clause of the federal Constitution which forbids the enactment of statutes which impair the obligation of contracts; that the acts done by the officials in 1840 in connection with the location of the county seat at Crown Point effected and created a contract for its permanent and unimpaired location and maintenance at Crown Point. The paragraph closes with a prayer for a perpetual injunction against the board.

The second paragraph of the complaint states the facts generally; that the plaintiff is a taxpayer of Lake county; that the defendant, the board of commissioners, is about to purchase a lot at Hammond, and build a court-house there-

on for the superior court; that said board proposes to issue $50,000 in bonds to raise a building fund; and that they have no right to do any of the things charged, and a perpetual injunction is prayed. The defendant, the board of commissioners, demurred to each paragraph of the complaint, and its demurrer was sustained; and, the plaintiff refusing to plead further, judgment was rendered against him for costs. From this judgment he prosecutes this appeal, and assigns as error that the court erred in sustaining the demurrer to each paragraph of the complaint.

The first proposition advanced by counsel for appellant is that §19 of the original statute, as amended by the act of 1899, can not be construed so as to empower the board of commissioners of Lake county to construct the proposed building for the purpose of holding the sessions of the court therein. That courts like the one in question may be established in this State, and their jurisdiction defined by the legislature, is no longer a debatable question. As previously asserted, we have under consideration a legally constituted judicial tribunal, invested by law with a jurisdiction on a parity with that of the circuit court. The absolute necessity that this tribunal in each of the counties where it is authorized to sit should be provided with a suitable house where its sessions can be held and the business thereof conducted, and where its necessary ministerial officers can be accommodated in the discharge of their duties, is certainly evident. This necessity the legislature seems to have recognized, for by §19 as amended, it expressly enjoins on the board of commissioners of each of the respective counties the duty to provide a suitable and convenient place at the town, or city, fixed for holding the sessions of the court. It is disclosed that it is the will of the legislature that in Lake county the court shall sit at the city of Hammond, instead of at the regular county seat, and hence, in the discharge of the duty enjoined, the board of commissioners of Lake county must be controlled by this legislative will, unless the

latter can, in some manner, be said to be an invalid exercise of power on the part of the legislature. Consequently, in performing the duty in question, the board must provide a suitable building or house, as required, at the city of Hammond, and not elsewhere. Section 7830 Burns 1901, §5745 Horner 1901, enumerating some of the general powers and duties of boards of commissioners, provides that, "Such commissioners, in their respective counties shall have power at their meetings,   *   *   *.  Fourth, to perform all other duties that may be enjoined on them by any law of this State." That the board of commissioners of Lake county is authorized under this provision to perform the duty enjoined upon it by §19 of the act of 1895, as amended, in reason can not be controverted. The debatable question presented by the parties to this appeal seems to be to what extent may the board act in the performance of the duty enjoined? Counsel for appellant contend that a proper construction of the terms or language employed in §19 will reveal the fact that it was not the legislative intent or purpose that the board, in the discharge of the duty in question, should go to the extent of purchasing the necessary real estate and causing to be constructed thereon a suitable and convenient court-house, but that the legislature only intended to make it the duty of the board to rent or lease some suitable and convenient house or building in which the sessions of the court may be held during the period which it may, by its creator, be permitted to exist. In this insistence we are unable to concur. Had the legislature intended to limit the power of the board to the mere leasing or renting of some suitable and convenient place for holding the sessions of the court, it certainly would have manifested its intention by the use of apt words to that effect, and would not have employed the broad term or terms which it did. As previously shown, the board of commissioners must perform such duties as the law making power may enjoin. The language employed in the section in question is peremptory,

and the duty of the board to provide a suitable and convenient place at the city of Hammond for the use of the court and its officials is clearly and expressly enjoined, without any limitation or specific direction as to the means to be employed by the board in the performance thereof. What did the legislature intend by the use of the term "provide"? Webster's International Dict. defines the word as follows: "To procure as suitable or necessary;" "to prepare;" "to make ready for future use;" "to furnish;" "to procure before hand." The definition in the Century Dict. is "to make ready;" "to prepare;" "to furnish or supply." It is evident then that when the meaning of the term in question as employed in the statute is considered it becomes manifest that the legislature intended to leave the question as to how the duty imposed should be performed to the wisdom and sound discretion of the board, and that the latter, in the exercise of its power, if it deemed proper, might either lease some suitable house for the use of the court and its officials, or it might, at the expense of the county, purchase a site, and erect or construct thereon a suitable and convenient house or building for the use and purposes mentioned in the statute.

Counsel for appellant assert that, if the statute should be so construed as to authorize the board to build a court-house at Hammond, it might decide to build one at the unnecessary expense of $100,000 or over, and thereby impose burdensome taxation upon appellant and other taxpayers of Lake county. But counsel seemingly have overlooked the fact that, under the law as it now exists, the board of commissioners of Lake county is not the sole arbiter in respect to the cost of a suitable public building to be constructed for the use of the court in question. By a statute entitled "An act concerning county business", approved March 3, 1899, some four days prior to the passage of the act amending §19, the board of commissioners is devested of the power which it formerly possessed in regard to the amount of money which it might

appropriate and expend for the construction of county buildings. By the provision of that act the authority to make an appropriation of public funds to defray the expenses of constructing county buildings is lodged in the county council,—as is also the authority to purchase real estate of the value of $1,000 and over. See §§19, 20, 25, and 34, Acts 1899, p. 343. By §32 of the same act the county council is invested with the exclusive power to borrow money for the county and to issue bonds and other obligations therefor. By the provisions of §48 of the statute creating a county council in each county in this State, the members first appointed by the respective circuit courts were required to meet and organize on the first Monday in August, 1899, and thereafter such council was authorized to exercise all of the powers and perform all of the duties conferred by that act. This suit was commenced, as previously shown, on September 18, 1899, and we must assume that this council in Lake county had been duly organized on the day designated by the statute. There is nothing in the complaint to show that the board of commissioners had or was attempting to usurp the power of the county council by appropriating the public funds to the construction of the court-house in dispute, or by borrowing money for the county and issuing its bonds or other obligations therefor. An examination of the provisions of the county reform law will fully disclose that the fears of appellant that the board of commissioners, in providing a place for holding the sessions of the court, will borrow money and issue the bonds of the county, and will impose on himself and other taxpayers the burden of paying excessive taxes, in order to meet the expense arising out of the construction of an unnecessary and "costly court-house", are groundless. This the board, under the law as it then and now exists, is powerless to do without the sanction of the county council given or obtained in the manner provided by the law. The duty enjoined on the board by §19, to provide a suitable and con-

venient place for the holding of the court, must be read in the light of these provisions of the county reform law.

It is next contended that §19, as amended by the act of 1899, violates §19 of article 4 of the State Constitution, which reads: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be embraced in the title." The contention is that there is nothing in the title of the original act to indicate that it was the purpose of the legislature to provide for a suitable room or rooms for holding the particular court in the city or town as designated. The subject of the original act as expressed in its title is to establish a superior court for the counties of Lake, Porter, and LaPorte. To provide in the body of the act for a suitable building in which the court might sit is certainly a matter connected with the subject of legislation, and germane thereto. It was not necessary for the title to go into details and advise all concerned in respect to what matters were properly connected with the proposed legislation. It can not be successfully affirmed that to provide for securing a place in which the sessions of the court might be held—which was certainly an essential matter pertaining to that tribunal—is a subject distinct and separate from its creation.

It is disclosed that the provisions of §5 of the original statute by subsequent amendments have been extended and made to provide that the clerk and sheriff shall each be paid from the fees collected by them an additional annual compensation of $600 for their required services. Appellant, therefore, claims that this is special or local legislation in regard to the compensation of county officers, and hence it violates §22, article 4 of the Constitution; thereby the whole act is rendered invalid, and must be declared void in its entirety. There is no merit or force in this contention, for it is evident that if what appellant claims were conceded to be true, that the provision of §5 authorizing additional compensation to be paid to the two officials mentioned is invalid,

such provision can easily be eliminated without impairing or affecting the operation of the law as a whole, and it would still be complete in itself, and capable of being executed. Such being the case, under the circumstances, it is well settled that the law in other respects will be upheld. *State, ex rel.,* v. *Denny,* 118 Ind. 449, 4 L. R. A. 65; *State, ex rel.,* v. *Blend,* 121 Ind. 514, 16 Am. St. 411; *State, ex rel.,* v. *Gorby,* 122 Ind. 17; *Henderson* v. *State, ex rel.,* 137 Ind. 552, 24 L. R. A. 469; *State, ex rel.,* v. *Krost,* 140 Ind. 41.

If the particular provision in §5 in respect to the compensation of the sheriff and clerk was eliminated, these officials would, nevertheless, be required to render the services in question, as they did under the section as originally enacted, without additional compensation. We may, however, suggest that counsel for appellant seem to entertain an erroneous view in regard to §22, article 4 of the Constitution as amended in 1881. This court has held that this section as it now stands permits, in a sense, the enactment of local or special laws in relation to fees and salaries; that is to say, that such laws may be so made "as to grade the compensation of officers in proportion to the population and necessary service required." *State, ex rel.,* v. *Boice,* 140 Ind. 506; *Legler* v. *Paine,* 147 Ind. 181. As the question is here presented, it is not essential, under the circumstances, that the validity of the salary features of the section in question be determined. That matter is properly left for decision until it may be raised and presented by those more necessarily concerned and interested than is appellant.

It is next and lastly insisted that the statute in question operates as a "piece meal" method to remove the seat of justice from Crown Point to the city of Hammond, and therefore violates §10, article 1, of the Constitution of the United States, which *inter alia* provides that "No state shall pass any law impairing the obligation of contracts." If appellant's assertion could be said to be true, he has not shown, under the facts, that he has any contract which would be im-

paired by the removal of the county seat in whole or in part from its present site, and we are unable to discover in what manner this provision of the federal Constitution has been violated by the legislature in the enactment of the statute in dispute.   The fact that the county seat of Lake county was originally located at the town where it now is, in the year 1840, under and in pursuance of a statute passed by the legislature in 1824, which in terms provided "that whenever any new county shall be laid off, five commissioners shall be appointed,   *   *   *   and shall proceed to fix on the most eligible and convenient place for the permanent seat of justice of such new county,   *   *   *   and it shall further be the duty of such commissioners to receive donations in land from any person or persons owning land in such county and offering donations for the use of the same, and to fix on such place for the seat of justice in such new county as near as might be to that position which would likely be central and permanent after future divisions as might best subserve the interests of such county," and the further fact that one Robinson, through whom appellant claims title to that portion of the lot upon which is situate the drug store conducted by him, may, along with others, have made donations, under this statute, of lands or other means to secure the location of the county seat at the point in question, would not in a legal sense constitute a contract, or preclude or estop the State from removing the seat of justice to a point elsewhere in the county, by subsequent or future legislation.   In the absence of any constitutional provision to the contrary, the location and removal of county seats are matters wholly within the power and control of the legislative department. When that body locates a county seat, either directly or through the medium of commissioners, it is fixed only to remain until changed by subsequent legislation.   There is certainly, under the circumstances, no unalterable stipulation, either express or implied, that Crown Point shall for all time remain the seat of justice of Lake county.   A county

is a public corporation organized to carry out the purposes or objects connected with the administration of the State's government, and is therefore properly the subject of legislative control. As a general rule, in the removal of county seats, no private property rights in the eye of the law are violated; and while it is true that the interest of individuals may suffer, and frequently do, nevertheless, under the circumstances, such interest must yield to the demand of public necessity and convenience, and such losses, if any, fall within the application of the maxim *damnum absque injuria*. The following authorities fully support the principles above asserted: *Elwell* v. *Tucker,* 1 Blackf. 285; *Armstrong* v. *Board, etc.,* 4 Blackf. 208; *Adams* v. *County of Logan,* 11 Ill. 336; *Parmeter* v. *Bourne,* 8 Wash. 45, 35 Pac. 586, 757; *Worsham* v. *Richards,* 46 Tex. 441; *Harrell* v. *Lynch,* 65 Tex. 146; *Walker* v. *Tarrant County,* 20 Tex. 16; *Twiford* v. *Alamakee County,* 4 Green (Iowa) 60; *Luce* v. *Fensler,* 85 Iowa 596, 52 N. W. 517; *Newton* v. *Commissioners,* 100 U. S. 548, 25 L. Ed. 710.

It certainly can not be said that the commissioners under the provisions of the statute of 1824 were authorized to enter into any contract in respect to the location of a county seat, or were empowered to make the location thereof depend on any donations which might be made by those who desired to secure the seat of justice at a certain point. While we are clearly of the opinion that appellant's learned counsel are mistaken in their claim that the act in controversy in any manner operates in its enforcement to remove the county seat from Crown Point, or that any federal question whatever is involved, still, as they have earnestly argued the question, we have deemed it proper to show by the authorities under the facts that, even though what they assert were true, their client has no grounds upon which to base his contention that a federal question is in any way involved in this case.

It follows from what we have said, and we so conclude,

that neither paragraph of the complaint states a cause of action, and the demurrer thereto was properly sustained.

Judgment affirmed.

Gillett, J., did not participate in this decision.