CITY OF NORTH MUSKEGON *v.* RODGERS.

1. MUNICIPAL CORPORATIONS—PARKS—NORTH MUSKEGON CHARTER —CITIES.

The provisions of the charter of North Muskegon (sections 3, 13, chap. 6, Act No. 466, Local Acts 1895) authorizing the city to "provide" parks, and to "take, accept and hold" real estate for any purpose connected with parks, are sufficient to authorize the city to purchase land for a public park.

2. TAXATION—TAX DEEDS—MUNICIPAL CORPORATIONS—POWER TO PURCHASE AT TAX SALE.

Where a city is authorized to buy land for park purposes, and there is nothing in its charter forbidding its purchasing property at a tax sale, and the evidence showed the purchase of property by complainant city at a tax sale for park purposes, that the sale was reported to the court and duly confirmed, that the State authorities recognized the validity of the sale and issued a deed, that notice was duly served upon defendant, who took no steps to redeem, that there is no claim on the part of defendant that the taxes were paid or the property exempt, and that more than five years had elapsed after confirmation before filing the bill, the sale will be *held* valid, and the cloud removed from complainant's title.

Appeal from Muskegon; Sullivan, J. Submitted June 30, 1915. (Docket No. 73.) Decided September 28, 1915.

Bill by the city of North Muskegon against Lincoln Rodgers for the purpose of confirming in complainant title to land purchased at tax sale. From a decree for complainant, defendant appeals. Affirmed.

*Cross, Vanderwerp, Foote & Ross,* for complainant.

*Simpson & Anderson,* for defendant.

MOORE, J. This is a bill to quiet the title to land acquired by the complainant city for park purposes at a tax sale. From a decree in favor of the complainant the case is brought here by appeal.

The questions involved are stated by the solicitors for the defendant to be:

(1) Has complainant power to purchase lands for park purposes?

(2) Can complainant become the purchaser of land at a tax sale?

(3) Is complainant's deed to the land in question void?

(4) Does the confirmation of sale preclude defendant from questioning complainant's title where the sale and deed are void?

(5) If complainant's deed is void, is defendant estopped from questioning its validity?

(6) Must not a purchaser of land under tax proceedings serve notice of redemption on all grantees named in recorded tax deeds purporting to convey a portion or portions of the land, regardless of the validity of such tax deeds?

As to the last-named question it may be said that the tax deeds to which counsel refer did not cover the lands involved here. An answer to questions 1, 2, and 4 will take care of all the questions involved.

The property in question is vacant property, and

lies between Muskegon Lake and Bear Lake, about midway between the city corporate limits east and west. In the month of April, 1908, the council of the city of North Muskegon by resolution took action authorizing the purchase of the property to be used for public park purposes. Soon after the passage of this resolution the property was purchased for $43.44 by the city at the county treasurer's sale on May 9, 1908, for the taxes of 1905. The sale was reported to the court in due time, and no objections were filed thereto. The sale was duly confirmed. No redemption of the property having been made, a deed was issued to the complainant on May 18, 1909, by the auditor general. After the deed was issued, complainant caused an examination to be made of the records in the office of the register of deeds, and obtained the information that the grantee under the last recorded deed in the regular chain of title to the land in question was the defendant, that there were no recorded tax deeds issued by the auditor general covering the land, and that there were no undischarged recorded mortgages. A notice of redemption was served on the defendant by the sheriff on June 4, 1909, and proof of such service filed with the register in chancery on June 4, 1909. Defendant failed to redeem after receiving this notice. He also failed to take any steps to set aside the tax title, although he knew that the property was being taxed right along. May 4, 1909, a certificate of purchase was issued to the city of North Muskegon for the taxes of 1906, $354.45; and the city also paid taxes for 1907, $54.96; for 1908, $49.24; and for 1909, $29.12. After defendant failed to redeem the land, it was placed upon the several tax rolls as exempt property which was owned by the city. With this brief statement of facts we may approach the questions presented by counsel:

1. Has complainant power to purchase lands for park purposes?

The charter provisions are contained in subdivision 32 of section 3 of chapter 6, and section 13 of chapter 6 of said act (Act No. 466, Local Acts 1905). Subdivision 32 of section 3 reads as follows:

"To provide for public squares and parks, and make grades and improve the same, and all grounds in said city belonging to or under the control of the corporation, and to control and regulate the same consistently with the purposes and objects thereof."

Section 13 of chapter 6 reads as follows:

"The city of North Muskegon shall have power to take, accept and hold any real or personal estate, whether by gift, bequest or devise for any purpose connected with parks, cemeteries or public grounds of said city, or for any public institution or charity, and when accepted it shall be the duty of the common council to use and appropriate the same for the uses and purposes mentioned in the instrument giving, granting or devising the same, and for no other purpose."

The city is also authorized by subdivision 45 of section 3 of chapter 6 to purchase land for cemetery purposes.

Counsel argue that city charters must be strictly construed, and no powers can be inferred, citing *Schneider* v. *City of Detroit*, 72 Mich. 242, 247 (40 N. W. 329, 2 L. R. A. 54), and hence the city may not purchase land. We think this too narrow a construction to put upon the language, "To provide for public squares and parks." In *State, ex rel. Means* v. *City of Hiawatha*, 53 Kan. 477 (36 Pac. 1119), it was held that a provision "to provide" authorized a purchase. In *Swartz* v. *Board of Commissioners of Lake County*, 158 Ind. 141 (63 N. E. 31), the court, in construing a statute providing that the board of county commissioners of Lake and La Porte counties should "provide" a suitable and convenient place for the holding of the superior court, said:

"The language employed in the section in question is peremptory, and the duty of the board to provide a suitable and convenient place at the city of Hammond for the use of the court and its officials is clearly and expressly enjoined, without any limitation or specific direction as to the means to be employed by the board in the performance thereof. What did the legislature intend by the use of the term 'provide'? Webster's International Dictionary defines the word as follows: 'To procure as suitable or necessary'; 'to prepare'; 'to make ready for future use'; 'to furnish'; 'to procure beforehand.' The definition in the Century Dictionary is 'to make ready'; 'to prepare'; 'to furnish or supply.' It is evident, then, that when the meaning of the term in question as employed in the statute is considered, it becomes manifest that the legislature intended to leave the question as to how the duty imposed should be performed to the wisdom and sound discretion of the board, and that the latter, in the exercise of its power, if it deemed proper, might either lease some suitable house for the use of the court and its officials, or it might, at the expense of the county, purchase a site and erect or construct thereon a suitable and convenient house or building for the use and purposes mentioned in the statute."

In *Bloss* v. *Board of Supervisors of Jackson County*, 170 Mich. 607 (136 N. W. 589, Am. & Eng. Ann. Cas. 1914A, 1191), it was contended that, while an organized county might purchase and hold real estate for the use of the county, as the county was the creature of the legislature, it could exercise only such powers as had been conferred upon it, and that it could not hold real estate devised to it by will; but this court held such a devise was valid. See, also, *Penny* v. *Croul*, 76 Mich. 471 (43 N. W. 649, 5 L. R. A. 858). It is a fact of which we may well take notice that cities and villages are very generally acquiring and adorning public spaces called public squares and parks. It is a practice to be commended and encouraged.

2 and 4. Can complainant become the purchaser of

land at a tax sale? If not, can defendant question this proceeding?

The contention of counsel is:

"A municipal corporation, in the absence of any enabling statute, has no authority at law to become the purchaser of land at a tax sale and acquire a title by complying with the statute in respect to such sales. The general power to buy and hold real estate does not authorize such a purchase."

The cases are not in harmony. Counsel do not call our attention to any case on all fours with the instant case. We have already shown that the complainant was authorized to purchase land for park purposes. In 20 Am. & Eng. Enc. Law (2d Ed.) p. 1185, it is said:

"Municipal corporations may acquire such property as they have the right to possess in any lawful manner, in the absence of charter provision restricting or prescribing a particular mode. They may lease, take by devise or bequest, or purchase on credit, if such power is not denied or restricted by some charter or statute provision."

See *Kellar* v. *Wilson,* 90 Ky. 350 (14 S. W. 332).

Section 70 of the general tax law provides the manner of sale and who may become purchasers. There is nothing in the charter of the city which in terms forbids its purchasing property at a tax sale for park purposes. It made this purchase in 1908 for the express purpose of establishing a park. The sale was reported to the court. No objections were filed to it. It was duly confirmed. Later the city paid large amounts for taxes, and the land was listed as exempt because owned by the city, thus escaping taxation. The defendant, in June, 1909, was notified of the purchase by the city, and has taken no steps to redeem, and does not now offer to pay what the land should have paid in the way of taxes. The State recognized the regularity of the bid and issued its deed.

Section 70 of the tax law provides in part as follows (1 Comp. Laws, § 3893; 1 How. Stat. [2d Ed.] § 1839):

"All sales shall stand confirmed, subject to the right of redemption provided for in section seventy-four, unless objections thereto are filed within eight days after the time limited for filing such report, without the entry of an order or further notice. The practice with reference to setting aside such sales shall be the same, so far as applicable, as in a sale in equity on the foreclosure of mortgages: *Provided,* no sale shall be set aside for inadequacy of price, except upon payment of the amount bid upon such sale, with interest and costs: *Provided further,* that no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation. In such cases the owner of such lands may move the court at any time within one year after he shall have notice of such sale to set the same aside, and the court may so order upon such terms as may be just."

See *Rumsey* v. *Griffin,* 138 Mich. 413 (101 N. W. 571); *Blondin* v. *Griffin,* 133 Mich. 647 (95 N. W. 739); *Burns* v. *Ford,* 124 Mich. 274 (82 N. W. 885); *Berkey* v. *Burchard,* 119 Mich. 101 (77 N. W. 635, 79 N. W. 908); *Spaulding* v. *O'Connor,* 119 Mich. 45 (77 N. W. 323); *Harrington* v. *Dickinson,* 155 Mich. 161 (118 N. W. 931); *Jenkinson* v. *Auditor General,* 104 Mich. 34 (62 N. W. 163).

We are expressing no opinion about whether a city can, without any proper public purpose to be served, become a bidder at tax sales; but when a given piece of property is desired by a municipality for a public park, and it is offered for sale at a tax sale, and the city becomes a purchaser, and the facts are reported to the court, and the sale is confirmed, and the State authorities recognize the validity of the sale and issue a deed and all the other facts disclosed by this record appear, we think it would be very inequitable to hold the deed invalid. There is no pretense on the part of the defendant that the taxes were paid, or that the

property was exempt from taxation. More than five years elapsed after confirmation before this bill was filed. We think, under these circumstances, the sale should not be invalidated, and that the cloud should be removed from the purchaser's title.

The decree is affirmed, with costs.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.