**DANCY, County Judge, et al. v. DAVIDSON et al.**

No. 11447.

Court of Civil Appeals of Texas. San Antonio.

Oct. 4, 1944.

Rehearing Denied Nov. 1, 1944.

H. L. Faulk and Oscar C. Dancy, both of Brownsville, for appellants.

Taylor, Wagner & Taylor, of Brownsville, for appellees.

NORVELL, Justice.

This is an appeal from a permanent injunction restraining the County of Cameron and its Commissioners' Court from purchasing a certain building and lot situated in San Benito, Texas, from Mrs. Jennie B. Bell, "under and by virtue of the orders of April 29, 1944 (sic) entered by the Commissioners' Court of Cameron County superseding the orders of said Court of date April 13, 1944, and April 24, 1944. * * *"

The resolution of April 29, 1944, in part recites and provides:

"Whereas, there exists a necessity for Cameron County to acquire a building in the City of San Benito, in Cameron County, Texas, which said city is generally centrally located in the County, for the purpose of providing office space for certain administrative offices of Cameron County, and of the agencies of the United States Government for whose benefit it is provided by law that the County may furnish office space, public utilities, etc., and

"Whereas, Jennie B. Bell, a widow, owns Lot Number One (1) in Block Number Thirty-Three (33), of the Original Townsite of San Benito, Cameron County, Texas, upon which property there is now located a large two-story, fireproof, concrete and brick building, adequate to provide space to meet the needs of the County for the purposes above mentioned: and,

"Whereas, the said Jennie B. Bell has offered to convey the said property to Cameron County, free and clear of all encumbrances, for a total consideration of $37,-500.00, all taxes to be paid up to and through the year 1943, and the deed to be subject to all taxes, if  any, for the year 1944; and

"Whereas, the Commissioners' Court of Cameron County, Texas, have investigated the property and the needs of the County in connection therewith, and have determined that public needs and necessity require the purchase of a building similar to the one above mentioned, and that the building above mentioned is appropriate and will fulfill the needs of the County, and that the price therefor is fair and reasonable; and

"Whereas, this Court finds it to be the fact that the County has current revenues not otherwise appropriated, sufficient to purchase said property;

"Now, Therefore, be it ordered by the Commissioners' Court of Cameron County, Texas:

"First: That there exists a necessity in Cameron County for the purchase of a building in the locality of San Benito in said County, similar to the property hereinabove mentioned for general administrative purposes.

"Second: That the property above described is adequate to meet the needs of the County, is conveniently located, and that the price therefor is reasonable and fair.

"Third: That the County purchase said building at the price and upon the terms offered by the said Jennie B. Bell, upon delivery by the said Jennie B. Bell of complete abstracts covering said property, and upon approval of the title reflected thereby by the County Attorney of Cameron County, Texas; that the deed to be delivered to Cameron County recite a consideration of $37,500.00, and that said deed be likewise subject to all taxes for the year 1944; and upon the approval of such title as reflected by said abstracts by the County Attorney of Cameron County, Texas, and of the deed tendered to the County in connection therewith, that the County Treasurer shall issue proper warrant payable to the order of Jennie B. Bell, a Feme sole, for the said sum of $37,500.00, and that the 1944 budget be amended to include collected though unanticipated revenues, and to include this expenditure."

The City of Brownsville is the County Seat of Cameron County. The City of San Benito is centrally located in the county, some twenty miles north and west of Brownsville. According to the 1940 federal census, the population of Cameron County was 83,202, while that of Brownsville and San Benito was 22,083 and 9,501, respectively.

Prior to the time of the adoption of the proposal by the Commissioners' Court to purchase a building in San Benito, the County had been and now is maintaining certain offices or services in San Benito, namely, (1) the public health unit or organization which serves the entire county (Articles 4418f and 4434); (2) the office of the County Agricultural Agent and Home Demonstrator (Article 164); (3) the branch office of the County Assessor and Collector (Article 1605); (4) an Old Age Assistance Bureau (Articles 695c and 2372e —2), and a Relief Agency maintained by the federal government in co-operation with the county (Article 2372e—2). (Article references are to Vernon's Ann.Civ. Stats.) In addition to the agencies above named, the offices of the International Boundary Commission Engineers are maintained in San Benito and in the building which the Commissioners' Court is now attempting to purchase. These engineers have charge of the maintenance of the flood control system of levees in the lower valley of the Rio Grande including Cameron County. The federal government now pays rent for the offices of the engineers and it is contemplated that should the county purchase the building, the federal government

198

would continue renting that portion of the building now occupied by the engineers through an arrangement with the Commissioners' Court.

■ We think it clear that the agencies and offices above mentioned are performing governmental and public functions. Appellees have cited and we have found no constitutional or statutory provision which requires that the office of any of the agencies mentioned must be maintained in Brownsville, the County Seat. As we understand appellees' position, they do not question the legality of the maintenance of the offices mentioned in San Benito, but assert that the Commissioners' Court has no legal authority to purchase a building in which to house the agencies now operating in San Benito.

As to the powers of the Commissioners' Court, the Texas constitution provides:

" * * * The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Constitution, Article V, Sec. 18, Vernon's Ann.St.

Article 2351, Vernon's Ann.Civ.Stats., reads in part as follows: "Each commissioners court shall: * * * 7. Provide and keep in repair court houses, jails and other necessary public buildings."

■ These constitutional and statutory provisions seem to fully answer the question presented. As above pointed out, the agencies now located in San Benito do exercise public functions. By the term "public building" as used in the statute is meant a building used primarily for public or governmental purposes, that is, to house public or governmental agencies. The power to provide includes the power to purchase. Swartz v. Board of Com'rs of Lake County, 158 Ind. 141, 63 N.E. 31. The Commissioners' Court is the legal body authorized under the statute to determine whether or not a "public building" is "necessary," and its decision relating thereto can not be dis-turbed by this Court, except upon a showing of an abuse of discretion. Bradford v. Moseley, Tex.Com.App., 223 S.W. 171; Hidalgo County v. Johnstone, Tex.Civ.App., 137 S.W.2d 825; Dodson v. Marshall, Tex. Civ.App., 118 S.W.2d 621; McWilliams v. Commissioners' Court of Pecos County, Tex.Civ.App., 153 S.W. 368. There is no showing here that the Commissioners' Court has abused the discretion vested in it by law.

■ We think that the plain wording of the statute authorizes the proposed purchase by the Commissioners' Court. Appellees, however, contend that although neither the Supreme Court nor any Court of Civil Appeals has construed the wording of Article 2351, Section 7, as applied to a situation similar to that disclosed in the record here, the Legislature has by enactments subsequently adopted placed a construction upon said article and section which should be followed by this Court and the power to make the contemplated purchase denied to the Commissioners' Court of Cameron County.

By way of exposition of this argument, appellees state that this "appeal raises the question of whether or not Article 2351, Sec. 7, controls the authority of the Commissioners' Court to make the purchase of the property in question, or Article 1605a." Of course, if the only authority possessed by a commissioners' court be that delegated by Article 1605a, Vernon's Ann.Civ.Stats., the Commissioners' Court of Cameron County does not possess the power to purchase the building here involved, as said Article 1605a has application only to counties in which there is situated a city other than a county seat having a population of 20,000 or more. Cameron County does not fall within this category.

In support of their contention, appellees rely upon and cite Article 16, Sec. 14, of the Texas Constitution, and Articles 1603, 1605, 1605a, and 2370, Vernon's Ann.Civ. Stats., and call attention to various amendments to the articles mentioned. Parts of the constitutional and statutory provisions deemed pertinent are set out in the margin hereof.[1]

[1] Article 16, Sec. 14, Texas Constitution: "All civil officers shall reside within the State; and all district or county officers within their districts or counties, and shall keep their offices at such places as may be required by law; and failure to comply with this condition shall vacate the office so held."

Article 1603, Vernon's Ann.Civ.Stats.: "The county commissioners court of each county, as soon as practicable after the establishment of a county seat, or after

We are unable to agree with appellees' contention as to a legislative construction of Article 2351, Section 7. This section has remained upon the statute books of the State through various revisions of our statutory civil law without change in wording since 1876. The Legislature had not attempted to amend the section by a direct enactment

its removal from one place to another, shall provide a court house and jail for the county, and offices for county officers at such county seat and keep the same in good repair."

Article 1399, R.S.1911, Art. 706, R.S. 1879, reads as follows: "The county judge, sheriff, clerks of the district and county courts, county treasurer, assessor of taxes and collector of taxes, county surveyor and county attorney of the several counties of this state shall keep their several offices at the county seats of their respective counties."

In 1925 this article was amended so as to permit tax assessor and tax collector to maintain a branch office in a city of 20,000 population or over situated within the county but which was not a county seat. Acts 1925, 39th Leg. Ch. 70, p. 224. The article as amended was given number 1605 in the 1925 Revision of the Civil Statutes.

The article was further amended in 1931 and 1937, Acts 1931, 42d Leg. p. 819, ch. 338, and Acts 1937, 45th Leg. p. 63, ch. 39, so that at the present time said article insofar as is material here reads as follows:

"The County Judge, Sheriff, Clerks of the District and County Courts, County Treasurer, Assessor and Collector of Taxes, County Surveyor and County Attorney of the several counties of this State, shall keep their offices at the county seats of their respective counties; provided, however, that in all counties having a city or cities, other than the county seats, within their boundaries, having a population of five thousand (5,000) and over, and in counties of over three hundred fifty thousand (350,000), according to the last Federal Census, the Assessor and Collector of Taxes when authorized by Order of the Commissioners' Court may maintain a branch office in said city or cities, * * * and provided further that in all counties having a population of more than seventy-four thousand (74,000), according to the last Federal Census, and containing one or more cities or towns, other than the county seat, which has in excess of one thousand (1,000) inhabitants, according to the last Federal Census, said Tax Assessor and Collector with the consent and approval of the Commissioners' Court may maintain a branch office and may appoint a Deputy Tax Collector in each such town

or city, who shall have the right to collect taxes from all persons who desire to pay their taxes to him, and to issue a valid receipt therefor."

The pertinent part of Article 1605a, Acts 1933, 43d Leg. p. 101, ch. 49, reads as follows:

"Sec. 1. In all counties having a city or cities other than the county seat within their boundaries, of a population of twenty thousand (20,000) and over, according to the last Federal Census, the Commissioners Court of each said county shall have the power and authority to provide, maintain, and repair an office building and/or jail in the same manner as such Commissioners Court may now provide for and maintain a courthouse and jail at the county seat, and upon the acquisition or construction of such office building, the Commissioners Court may authorize, in the same manner as authorized by Article 1605, the maintaining of branch offices in each of said cities, except the District Clerk, County and District Judges, County Clerk, and County Treasurer, provided that all officers shall keep all original records at the county seat, and deputies may be provided as authorized in Article 1605. The Commissioners Court shall have the care and custody of such buildings and may place such limitations as it may see fit on the authorization and maintenance of branch offices."

Article 2370, Revised Statutes 1925, provided that: "Said (commissioners) court may, when necessary, provide buildings, rooms or apartments at the county seats, other than the court house, for holding the sessions of the county courts."

In 1941, this article was amended, Acts 1941, 47th Leg. p. 643, ch. 388, so that Section 1 thereof reads as follows:

"Section 1. The Commissioners Court of any county may, when necessary, provide buildings, rooms, or apartments at the county seat, other than the courthouse, for holding the sessions of the County Courts, District Courts, and for carrying on such other public business as may be authorized by the Commissioners Court, and may lease or rent such part of any such buildings, rooms, or apartments as may not be necessary for public use."

Various additional sections relating to financing and control were also added to the article by the 1941 amendment.

adopted for that purpose. In our opinion, a legislative intention to amend the section or restrict the grant of power therein contained, can not be fairly implied from the legislative enactments cited by appellees, which have been adopted since the 1925 revision of our civil statutes. The theory of a "legislative interpretation" is not tenable.

We do not construe the constitutional and statutory provisions relating to counties, county seats and commissioners courts as prescribing that all "public buildings" must be located at the county seat. We fail to find an expressed or implied intent on the part of the Legislature to restrict the power of the commissioners court to "provide public buildings" for public agencies not required by law to be located at the county seat. The contemplated use of the building as shown by the record here and as above pointed out would not. make it a "sub-courthouse" and would in no way violate any law with reference to the location of certain offices at the county seat. The only "branch office" to be located in the San Benito building is that of the Assessor and Collector of Taxes, which is now legally in operation in San Benito, in conformity with the provisions of Article 1605, Vernon's Ann.Civ.Stats.

We therefore conclude that the Commissioners' Court of Cameron County, in the exercise of its sound discretion (and no abuse thereof is shown), is legally authorized to purchase the building involved for the intended purpose under and by virtue of the provisions of Article 2351, Section 7, Vernon's Ann.Civ.Stats.

■ The statutes do provide that certain offices shall be located at the county seat. It may be implied from the provisions of Article 2370 (prior to its amendment in 1941) that all courts other than the "county courts" were required to hold their sessions in the courthouse. The amendment of the article largely did away with this restriction and provided a permissible method for financing and acquiring a public building other than a courthouse in the county seat.

Article 1605, together with the amendments thereto (including Article 1605a), relate to offices which under the provisions of the original article must be maintained at the county seat. This article, or its amendments, can not be construed as restricting or taking away the power of the Commissioners' Court to provide public buildings to house public agencies not required by law to be located at the county seat. Although it is contemplated that a branch of the office of the County Assessor and Collector of Taxes will be located in the building, the primary use intended is not that of a sub-courthouse or building in which to house various branch agencies whose main offices must be situated at the county seat, which is the situation contemplated and provided for by Article 1605a.

■ We conclude, therefore, that the Commissioners' Court of Cameron County is legally authorized to purchase the building involved for the purposes intended, provided, of course, that in making the financial arrangements for such purchase, the provisions of the Uniform Budget Law (Article 689a—9 to 689a—12, inclusive, Vernon's Ann.Civ.Stats., relating to counties) were complied with.

This brings us to the second point presented by this appeal.

It was stipulated by the parties in the court below that:

"It is agreed by and between plaintiffs and defendants and interveners that the 1944 budget of the Commissioners' Court of Cameron County, Texas, as originally adopted, contained no provision of $37,-500.00, or any other specific sum, for the purchase of the property in controversy.

"It is further agreed that there has been no amendment to the 1944 budget in so far as the property in controversy is concerned, unless the Court's order, passed by the Commissioners' Court on April, 1944, a copy of which is attached to the Trial Amendment on file, is so construed."

The order of the Commissioners' Court referred to in the stipulation is that set forth (insofar as material parts are concerned) in the forepart of this opinion. Briefly stated, the order declares that (1) there exists a necessity for Cameron County to acquire a building in San Benito, (2) that the building owned by Mrs. Jennie B. Bell is suitable for the County's needs, (3) that the price asked therefor is reasonable and fair, (4) that the County has current funds not otherwise appropriated, sufficient to purchase the property, (5) that Mrs. Bell be paid $37,500.00 by warrant of the County Treasurer, upon approval of title and delivery of deed, and that (6) "the 1944 budget be amended to include collected though unanticipated revenues, and to include this expenditure."

Article 689a—11, Vernon's Ann.Civ. Stats., in part, provides:

"* * * When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the Court. Except that emergency expenditures, in case of grave public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the Court as amendments to the original budget."

It can hardly be contended that the order of April 29, 1944, in itself effected an amendment of the 1944 budget. In fact, the order does not contain findings that the emergency conditions set forth in the statute as authorizing an amendment of the budget do in fact exist. It may have been contemplated by the Commissioners' Court that some further order with reference to the county's budget would be entered. This is suggested in appellants' brief.[2] However that may be, the order of April 29, 1944, is insufficient in itself (and there is no further order in the record) to authorize the delivery of a county warrant for the sum of $37,500 to Mrs. Bell. It follows that the injunction issued restraining the payment of the county's funds to her under and by virtue of the Commissioners' Court order of April 29, 1944, was properly issued.

In the briefs and upon oral argument of this appeal, there is and was a diversity of opinion as to the scope and effect of the injunction issued by the trial court. Appellants construe the injunction issued as prohibiting the purchase of the building even though the budget law be complied with by appropriate action in the future. The decree itself seems to be limited to the order of April 29, 1944, which, as above pointed out, is insufficient in itself, under the budget law, to authorize the paying out of public funds. However, in order to remove all doubt as to the construction or effect of the decree the same will be reformed so as to restrain Cameron County and its Commissioners' Court from paying to Mrs. Jennie B. Bell any sum of public monies under the order of April 29, 1944, standing alone, without prejudice however, to such other and further actions as may be taken by said County and its Commissioners' Court with reference to the proposed purchase of the building involved. The judgment of the trial court as reformed will be affirmed. Costs of appeal are adjudged against appellants.

Judgment reformed and as reformed, affirmed.

---

[2] Appellants have filed herein a motion for leave to file a certified copy of the 1945 budget adopted by the Commissioners' Court of Cameron County on August 17, 1944. An intention on the part of said court to set aside and provide funds for the purchase of the building here involved in the 1945 budget is indicated. However, the decree appealed from was rendered on May 10, 1944, and we can not consider the 1945 budget as a part of the record on this appeal, and express no opinion as to the legality thereof. Leave to file said copy of the 1945 budget is denied.