The City of Crawfordsville *et al. v.* Braden.

Judgment affirmed.

Filed Jan. 7, 1892.

No. 16,200.

THE CITY OF CRAWFORDSVILLE ET AL. *v.* BRADEN.

POLICE POWER.—*Delegation to Municipalities.— How Made.*—The police power primarily inheres in the State; but the Legislature may delegate, at least a part of it, to municipal corporations, either in express terms or by implication arising from the fact of the creation of such corporations.

MUNICIPAL CORPORATIONS.—*Enumeration of Powers in General Statute.—Effect.*—The enumeration in the general statute for the incorporation of cities of certain powers which would belong to the corporation without such specific enumeration is merely a declaration of a pre-existing power, or of a power which is inherent in the nature of a municipal corporation, and which is essential to enable it to accomplish the end for which it is created. Such enumeration of powers, although it include a portion of those usually implied, does not necessarily operate as a limitation of corporate powers by excluding those not enumerated.

SAME.—*Health and Safety of Inhabitants.—Right to Guard.*—By the act authorizing or incorporating a municipal corporation, the Legislature expressly delegates to the municipality the power to preserve the health and safety of its inhabitants.

SAME.—*Lighting Street.—Implied Power.*—The power to light the streets and public places of a municipality is one of its implied and inherent powers, necessary to properly protect the lives and property of its inhabitants, and as a check on immorality. No statute is necessary to give it this power.

SAME.—*Discretion.—Not Controlled by Courts.*—The discretion of municipal corporations, within the sphere of their powers, is not subject to judicial control, except in case of fraud or where the discretion has been grossly abused to the oppression of the inhabitants.

The City of Crawfordsville *et al.* v. Braden.

SAME.—*Power to Light.—Implied Power to Select Means.*—The power to light a city carries with it incidentally the further power to procure or furnish whatever is necessary for the production and dissemination of the light.

SAME.—*Light.—Furnishing to Private Consumers.*—A city has the power to establish works for lighting its streets, and may, in connection therewith, furnish private consumers such light by contract.

SAME.—*Resolution.—Ordinance.—When May Use Either One.*—Where a city has power to act in a given instance, and its charter or the general law does not prescribe the manner of its action, it may accomplish its purpose either by a resolution or by an ordinance.

JUDICIAL NOTICE.—*Electricity.*—The courts take judicial notice of electricity and of its properties, but not of the several methods of generating, transmitting or using it.

From the Montgomery Circuit Court.

*W. T. Brush, P. S. Kennedy, S. C. Kennedy, T. F. Davidson* and *J. West,* for appellants.

*B. Crane* and *A. B. Anderson,* for appellee.

McBRIDE, J.—The question we are required to decide in this case is, has a municipal corporation in this State the power to erect, maintain and operate the necessary buildings, machinery and appliances to light its streets, alleys and other public places with the electric light, and at the same time and in connection therewith to supply electricity to its inhabitants for the lighting of their residences and places of business. Some other questions are incidentally involved, but the principal controversy is as above stated.

That a city or an incorporated town may buy and operate the necessary plant and machinery to light its streets, alleys and other public places is not controverted by the appellee, but he denies the right to furnish the light to the individual for his private use. The question is argued on the theory that if the city has such power it must be by virtue of some express legislative grant, and is not among the implied powers possessed by municipal corporations; that statutes conferring powers upon municipal corporations, especially those involving the exercise of the taxing power, must be

strictly construed, and that, strictly construed, no statute confers the necessary authority.

The purchase of the necessary land, machinery and material, and the erection and maintenance of such a plant do involve the exercise of the taxing power. The necessary funds must be supplied by taxing the taxpayers of the municipality.

The only statute bearing directly upon this question is the act of March 3d, 1883. (Elliott's Supp., section 794 *et seq.*) Section 794 contains the following: " That the common council of any city in this State, incorporated either under the general act for the incorporation of cities, or under a special charter, and the board of trustees of all incorporated towns of this State, shall have the power to light the streets, alleys and other public places of such city and town with the electric light, or other form of light, and to contract with any individual or corporation for lighting such streets, alleys and other public places with the electric light, or other forms of light, on such terms, and for such times, not exceeding ten years, as may be agreed upon."

Section 795 provides that for the purpose of effecting such lighting the common council of a city, or board of trustees of a town, may provide by resolution or ordinance for the erection and maintenance in the streets, etc., of the necessary poles and appliances.

Section 796 authorizes granting to any person or corporation the right to erect and maintain in the streets, etc., the necessary poles and appliances for the purpose of supplying the electric or other light to the inhabitants of the corporation.

Section 797 validates contracts of a certain character, made before the enactment of the statute, and section 798 provides for the appropriation of lands and right of way by corporations engaged in the business of lighting cities or towns, " or the public or private places of their inhabitants, with the electric light," etc.

It will be observed that, while section 796 provides for granting to third persons the right to furnish the light to the inhabitants, it does not, in terms, give any such power to the corporation. It will, therefore, be necessary for us to inquire if the corporation possesses such power independently of the statute, or, if not, if the statute is susceptible of a fair construction, in accordance with established rules, which clothes the corporation with such power.

In the case of *Rushville Gas Co.* v. *City of Rushville*, 121 Ind. 206, this statute was considered, in so far as relates to the right of the city to buy and operate the necessary plant and machinery to light its streets, alleys and other public places, and it was held that the statute was sufficient to confer that power. In that case the court, after announcing the conclusion above stated, used the following language: " If there were any doubt as to the meaning of the act it would be removed by considering it, as it is our duty to do, in connection with the general act for the incorporation of cities, for that act confers very comprehensive powers upon municipal corporations as respects streets and public works, and contains many broad general clauses akin to those which Judge DILLON designates as 'general welfare clauses.' Our own decisions fully recognize the doctrine that municipal corporations do possess, under the general act, authority as broad as that here exercised, and the operation of that act is certainly not limited or restricted by the act of 1883."

The eminent author above referred to thus defines the powers of municipal corporations: " It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers ex-*pressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts

against the corporation, and the power is denied.   Of every municipal corporation the charter or statute by which it is created  is its organic act.   Neither the corporation nor its officers can  do  any act, or  make  any contract, or  incur any liability, not authorized thereby, or by some  legislative act applicable thereto.   All acts beyond the scope of the powers granted  are  void."   Dillon   Municipal  Corporations (4th ed.), section  89.   Judge  Dillon, however, quotes approvingly from  the  Supreme Court of  Connecticut as follows : Section 90, page 147 :  " All corporations, whether public or private, derive their powers from legislative  grant, and can do no act for which authority is not expressly given, or may not  be  reasonably inferred.   But if we were to  say that they can do nothing for which a warrant could not be found in  the  language of their charters, we should deny them, in some cases, the power of self-preservation, as well as many of the  means  necessary to  effect the essential objects of their incorporation.   And  therefore it has long been an established  principle  in  the law of  corporations, that they *may exercise all the powers within the fair intent and purpose of their  creation, which  are  reasonably proper  to give effect to powers  expressly granted*.   In  doing  this they must (unless restricted in this respect) have a choice of means adapted to ends, and are  not to be confined to any one mode of operation."  *City of Bridgeport* v. *Housatonuc R. R. Co.*, 15 Conn. 475 (501).

This principle has been repeatedly recognized by this court. Thus, in *Smith* v. *City of Madison,* 7 Ind. 86, it is said : " The strictness then to be  observed  in giving  construction to municipal charters should be such as to carry into effect every power clearly intended to be conferred  on the municipality, and every power necessarily implied, in order to the complete exercise of the powers granted."

Again, in *Kyle* v. *Malin*, 8 Ind. 34 (37), the court said : " The action of municipal corporations is to be held strictly within  the  limits  prescribed  by statute.   Within  these

limits they are to be favored by the courts. Powers expressly granted, or necessarily implied, are not to be defeated or impaired by a stringent construction."

Among the implied powers possessed by municipal corporations in this State are those grouped under the somewhat comprehensive title of " Police Powers "—a power which it is difficult either to precisely define or limit; a power which authorizes the municipality in certain cases to place restrictions upon the power of the individual both in respect to his personal conduct and his property; and also furnishes the only authority for doing many things not restrictive in their character, the tendency of which is to promote the comfort, health, convenience, good order and general welfare of the inhabitants.

The police power primarily inheres in the State; but the Legislature may, and in common practice does, delegate a large measure of it to municipal corporations. The power thus delegated may be conferred in express terms, or it may be inferred from the mere fact of the creation of the corporation. The so-called inferred or inherent police powers of such corporations are as much delegated powers as are those conferred in express terms, the inference of their delegation growing out of the fact of the creation of the corporation, and the additional fact that the corporation can only fully accomplish the objects of its creation by exercising such powers.

Special charters, as well as general statutes for the incorporation of cities and towns, usually contain a specific enumeration of powers granted to and which may be exercised by such corporations. In many cases the powers thus enumerated are such as would be implied by the mere fact of the incorporation.

When powers are thus enumerated in a statute which would belong to the corporation without specific enumeration, the specific statute is to be regarded, not as the source of the power, but as merely declaratory of a pre-existing power, or,

rather, of a power which is inherent in the very nature of a municipal corporation, and which is essential to enable it to accomplish the end for which it is created. And the enumeration of powers, including a portion of those usually implied, does not necessarily operate as a limitation of corporate powers, excluding those not enumerated. *Clark* v. *City of South Bend,* 85 Ind. 276 ; *First Nat'l Bank* v. *Sarlls,* 129 Ind. 201.

The corporation, notwithstanding such enumeration, still possesses all of the usually implied powers, unless the intent to exclude them is apparent, either from express declaration or by reason of inconsistency between the specific powers conferred and those which would otherwise be implied. The Legislature can unquestionably take from municipal corporations powers which would inferentially be conferred upon them by their creation, or it can restrict the exercise of such powers, or in any manner control their exercise, the legislative will being as to such matters supreme.

Among the implied powers possessed by municipal corporations is the power to enact and enforce reasonable by-laws and ordinances for the protection of health, life and property.

Thus, in this State it has been held that, independently of any statutory authority, such corporations possess the inherent power to enact ordinances for the protection of the property of its citizens against fire. *Baumgartner* v. *Hasty,* 100 Ind. 575 ; *First Nat'l Bank* v. *Sarlls, supra ; Hasty* v. *City of Huntington,* 105 Ind. 540 ; *Clark* v. *City of South Bend,* 85 Ind. 276 ; *Corporation of Bluffton* v. *Studabaker,* 106 Ind. 129.

This power will not only authorize the enactment and enforcement of ordinances establishing fire limits, regulating building and repairing buildings, and regulating the storage and traffic in inflammable or explosive substances, but the purchase of apparatus for extinguishing fires and furnishing

a supply of water. *Corporation of Bluffton* v. *Studabaker, supra.*

In the case of *City of St. Paul* v. *Laidler,* 2 Minn. 190, the Supreme Court of Minnesota, after holding that a municipal corporation is " a creature of the statute, and in the exercise its authority can not exceed the limits therein prescribed," says : " It is a body of special and limited jurisdiction ; its powers can not be extended by intendment or implication, but must be confined within the express grant of the Legislature," and then says further : " Incidental to the ordinary powers of a public municipal corporation, and necessary to a proper exercise of its functions, is the power of enacting sanitary regulations for the preservation of the lives and health of those residing within its corporate limits." If this statement is correct, it follows that to concede to municipal corporations the possession of such powers does not involve any extension, either by intendment or implication, of the powers expressly conferred by statute, but that by the act authorizing the organization of the corporation the Legislature expressly delegates to the municipality the power to take such steps as are necessary to preserve the health and safety (and we will add the property) of its inhabitants. The inference of the delegation of such powers follows inevitably and irresistibly, because their exercise is necessary to the accomplishment of the objects of the incorporation.

Where a municipal corporation attempts to exercise any of the powers thus implied, or inferentially conferred, it is within the rule of *Kyle* v. *Malin, supra,* as fully as it is when attempting to exercise those powers the warrant for which is found in the express letter of its organic law. It is to be favored by the courts, and such powers are not to be defeated or impaired by a stringent construction.

It is, of course, important and necessary to know in each case that the power claimed is, in fact, included in the implied powers of the corporation.

There can be little or no doubt that the power to light

The City of Crawfordsville *et al. v.* Braden.

the streets and public places of a city is one of its implied and inherent powers, as being necessary to properly protect the lives and property of its inhabitants, and as a check on immorality. This is forcibly set forth by Judge Dillon in his work on Municipal Corporations, as follows:

" In a most important particular, however, Rome suffers by comparison with modern cities. Its public places were *not lighted.* All business closed with the daylight. The streets at night were dangerous. Property was insecure. No attempt at public illumination was made. The idea does not seem to have occurred to them. Persons who ventured abroad on dark nights were dimly lighted by lanterns and torches. * * * No more forcible illustration of the necessity and advantages of lighting a city can be given than the pictures drawn by Lanciani and Macaulay, of the state of a great city buried in the darkness of night; and they show how clearly the power to provide for this is essentially and peculiarly one pertaining to municipal rule and regulation. Nor are these studies, and the facts that they reveal, without practical value to the jurist. They demonstrate that a large and dense collection of human beings occupying a limited area have needs peculiar to themselves, which create the necessity for municipal or local government and regulation, and this in its turn the necessity for corporate organization. The body thus organized, as it has duties, so it acquires rights peculiar to itself as distinguished from the Nation or State at large." Dillon Municipal Corporations (4th ed.), section 3*a.*

While Judge Dillon's remarks have, of course, special reference to great cities, the difference in that respect between the greater and the minor municipal corporations is a difference in degree, and not in kind. Wherever men herd together in villages, towns, or cities will be found more or less of the lawless or vicious; and crime and vice are plants which flourish best in the darkness.

So far as lighting the streets, alleys and public places

of a municipal corporation is concerned, we think that, independently of any statutory power, the municipal authorities have inherent power to provide for lighting them.  If so, unless their discretion is controlled by some express statutory restriction, they may, in their discretion, provide that form of light which is best, suited to the wants and the financial condition of the corporation.

It is well settled that the discretion of municipal corporations, within the sphere of their powers, is not subject to judicial control, except in cases where fraud is shown, or where the power, or discretion, is being grossly abused to the oppression of the citizen.  *City of Valparaiso* v. *Gardner*, 97 Ind. 1 ; 15 Am. & Eng. Encyc. of Law, 1046, and authorities cited.

We can see no good reason why they may not also, without statutory authority, provide and maintain the necessary plant to generate and supply the electricity required.  Possessing authority to do the lighting, that power carries with it incidentally the further power to procure, or furnish, whatever is necessary for the production and dissemination of the light.   The only authority cited which holds a contrary doctrine is that of *Spaulding* v. *Inhabitants, etc.*, 153 Mass. 129.

We are, however, unable to recognize the validity of the reasoning in that case.   We are unable to see the analogy between the city of Boston, because authorized to light its streets, engaging in whale fishing to procure oil for that purpose, or the other supposed cases, and the generation and supply of electricity.

Electricity is not a commodity which can be bought in the markets, and transported from place to place like oil. We take judicial notice of the laws of nature, and of nature's powers and forces, and therefore take judicial notice of that which is known as electricity, and of its properties ; not, of course, of the various methods of generating and transmitting or using it, but of the thing itself, and of its nature.

The City of Crawfordsville *et al.* v. Braden.

As in many other cases, here the judicial presumption out-runs the fact, and we are supposed to know, and to take judicial notice of more than we can, in fact, know in the present state of scientific knowledge. We must know, however, that it can not be generated and transported from place to place as we can procure and transport oil, clothing, etc., and that it can only be conveyed from the place where it is generated to where it is needed for lighting the streets, or to the numerous inhabitants of a city, so as to enable them to use it as a general illuminant, by invoking and exercising the power of eminent domain.

The corporation possessing, as it does, the power to generate and distribute throughout its limits, electricity for the lighting of its streets and other public places, we can see no good reason why it may not also, at the same time, furnish it to the inhabitants to light their residences and places of business. To do so is, in our opinion, a legitimate exercise of the police power for the preservation of property and health. It is averred in the complaint that the light which the city proposes to furnish for individual use is the incandescent light. Here again is a fact of which we are authorized to take judicial knowledge. A light thus produced is safer to property, and more conducive to health than the ordinary light. Produced by the heating of a filament of carbon to the point of incandescence in a vacuum, there is nothing to set property on fire, or to consume the oxygen in the surrounding air, and thus render it less capable of sustaining life and preserving health.

But little authority has been cited bearing on the precise question, and we have been able to find but little. The case of *Mauldin* v. *City Council of Granville* (N. C.), 8 Lawyers' Rep. Anno. 291, has been cited by the appellee. That was, like this, a suit by taxpayers of the city of Granville to restrain the city council from purchasing and operating an electric light plant to light the streets and public buildings of the city, and from using it for lighting private residences. In that case the

court says: " The city has the express power to own property, and it also has the implied right to light the city. * * * Considering that some discretion, as to the mode and manner, should be allowed the municipality, in carrying out the conceded power to light the streets of the city, we hold that the purchase of the plant was not *ultra vires* and void, so far as it was designed to produce electricity suitable for and used in lighting the streets and public buildings of the city." The court, however, denied the right to furnish the light to the individual citizen, on the ground that to do so would be entering into private business outside of the scope of the city government. The court refers to the lack of authority on the precise question, and that it is largely a question of first impression without authority.

The case of *Thomson Houston Electric Co.* v. *City of Newton* (Iowa), 42 Fed. Rep. 723, was a suit to enjoin the city of Newton from purchasing and operating an electric light plant and furnishing the light to the inhabitants. The only statutory authority claimed by the city is as follows: " To establish and maintain gas works or electric light plants, with all the necessary poles, wires, burners and other requisites of said gas works or electric light plant." Acts 22 Gen. Assem. (Iowa), p. 16.

It will be observed that this statute does not, in terms, confer any power not, in our opinion, as above stated, included among the implied powers of municipal corporations. The court says: " It is also urged that the city has only the authority to erect an electric plant for the purpose of lighting the streets and public places of the city, and is not authorized to furnish lights for use in the houses and stores of its citizens. * * *

" It has been the uniform rule that a city, in erecting gas works or water-works, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use ; and the

statutes of Iowa now place electric light plants in the same category."

The case of *Smith* v. *Nashville,* 88 Tenn. 464, is also in point as to the principle involved. The charter of the city of Nashville contained the following in its enumeration of the powers conferred upon the city : "To provide the city with water by water-works, within or beyond the boundaries of the city, and to provide for the prevention and extinguishment of fires, and organize and establish fire companies."

Acting under the authority thus conferred, the city established water-works, and in addition to making provision for the extinguishment of fires, it furnished water to the citizens.

The right to do this was disputed, and formed the principal subject of controversy. The court said : "Nothing should be of greater concern to a municipal corporation than the preservation of the good health of the inhabitants ; nothing can be more conducive to that end than a regular and sufficient supply of wholesome water, which common observation teaches all men can be furnished, in a populous city, only through the instrumentality of well-equipped water-works. Hence, for a city to meet such a demand is to perform a public act and confer a public blessing. It is not a strictly governmental or municipal function, which every municipality is under legal obligation to assume and perform, but it is very close akin to it, and should always be recognized as within the scope of its authority, unless excluded by some positive law. * * *

"It is the doing of an act for the public weal—a lending of corporate property to a public use. * * * It can not be held that the city, in doing so, is engaging in a private enterprise, or performing a municipal function for a private end.

While the authorities, on the precise question, are meager, we think the weight of authority, as well as of reason, tends to sustain the right of the municipality, through its proper officers, acting in the exercise of a sound discre-

tion, to furnish light as well as water to its inhabitants, not only in its public places, but in their private houses and places of business.

An additional question is presented and discussed. It is shown by the averments of the complaint that such action as the city authorities have taken, and are proposing to take, is by virtue of a resolution adopted by the city council, and not by virtue of an ordinance, and that if the city *is* authorized to erect and operate an electric light plant it can only do so by virtue of an ordinance duly enacted.

In so far as the city derives any authority from the act of March 3, 1883 (Elliott's Supp., section 794 *et seq.*), it is authorized to act either by resolution or ordinance ; but aside from the statute, where the city council has power to act in a given case, and its charter does not prescribe the manner of action, it may accomplish its purpose by resolution as well as by ordinance. Note to *Robinson* v. *Mayor, etc.*, 34 Am. Dec. 625, and authorities there cited.

The court erred in overruling the demurrer to the complaint. The cause is reversed, at the costs of the appellee, with instructions to the circuit court to sustain the demurrer.

Filed Oct. 27, 1891 ; petition for a rehearing overruled Jan. 7, 1892.