THE STATE OF KANSAS, *on the relation of W. F. Means, County Attorney, v.* THE CITY OF HIAWATHA *et al.*

CITY *May Purchase Electric Plant.* Section 60 of chapter 19 of the General Statutes of 1889 confers on the council of a city of the second class the right to provide for and regulate the lighting of the streets, and under said section the mayor and council have the power to purchase an electric plant for lighting the streets. That clause in the section which authorizes them to make contracts with any person, company or association for such purpose does not restrict them to supplying light by such a contract, but they may, in their discretion, provide lights for the streets and public places in such manner as they deem best, provided they do not exceed their powers in incurring obligations or levying taxes.

### Error from Brown District Court.

ACTION by *The State*, on the relation of W. F. Means, county attorney, against the *City of Hiawatha* and the General Electric Company. Judgment for defendants on demurrer, and plaintiff brings error. The material facts appear in the opinion herein, filed at the June session of the court, 1894.

*W. F. Means,* county attorney, for plaintiff in error; *James Falloon,* of counsel.

*W. F. Shale,* for defendant in error City of Hiawatha.

*Robert T. Herrick,* and *Hoff & Van Valkenburgh,* for defendant in error General Electric Company.

The opinion of the court was delivered by

ALLEN, J.: This action was instituted by the county attorney of Brown county, in the name of the state, to restrain the city of Hiawatha from erecting and maintaining an electric plant. The defendants answered, admitting that they had entered into a contract, a copy of which was attached to the answer, for the purchase by the city from the General Electric Company of an electric plant, for the purpose of lighting the public streets of the city, and alleging that such plant was

to be used exclusively for the purpose of lighting the public streets, and that it was not their intention to furnish lights to private citizens, or to use the same for any private purpose. The plaintiff demurred to the answer. The court overruled the demurrer, and the plaintiff electing to stand on its demurrer, judgment was entered for the defendants.

But a single question of law is presented by the record, namely, whether cities of the second class in Kansas can purchase, erect and maintain an electric plant for the purpose of lighting their streets and public places. Section 60 of chapter 19 of the General Statutes of 1889, relating to cities of the second class, reads as follows:

"Sec. 60. The council may provide for and regulate the lighting of the streets, and the erection of lamp posts, and the numbering of the buildings in the city, and the construction of sewers; and the council shall have power to make contracts with any person, company or association for such purposes; and give such person, company or association the privilege of furnishing light for the streets, lanes or alleys of said city for any length of time not exceeding 21 years. It may also, by ordinance, adopt a method of numbering the buildings, and make contracts to secure the same to be done."

It is contended that the statute should be strictly construed, and that, when so construed, it does not confer power on the city authorities to provide for lighting the streets by erecting an electric plant at its own expense, but that it is limited to accomplishing the object by making a contract with some person, company or association to furnish lights. The statute should receive a fair and reasonable interpretation. with a view to carry out its object. It should neither be destroyed by an unreasonable strictness, nor stretched to include that which was not in the legislative mind. The statute plainly says that the council may provide for and regulate the lighting of the streets, and they may also provide for numbering the buildings and the construction of sewers. Then it further provides, that they may make contracts for such purposes, and that, in providing for lighting the streets, they may grant the privilege for a time not exceeding 21 years. The language of the

statute with reference to making contracts applies as well to contracts for numbering the buildings, and for sewers, as for lighting the streets. No one, however, would contend for a moment that the city could not provide sewers at its own expense, and maintain them, but that it must let a continuing contract to some person or company for that purpose. The word "provide" is sufficiently comprehensive in its ordinary signification to include a provision by purchase.

There would be room to doubt the power of the city authorities to enter into a continuing contract for lighting the streets for a long term of years with an individual or a corporation if the statute did not contain express authority to do so, for in making such contract the mayor and council would necessarily bind their successors in office by their action, and compel levies of taxes through successors to carry out the terms of the contract. The section under consideration does not confine the mayor and council to any one particular mode of lighting the streets, nor of providing light. They are restricted, however, if the contract be let to an individual or company, to a term not longer than 21 years. It may be as much shorter as the parties agree on. We think, if the statute were open to a double construction, it should rather be given that one most favorable to the rights of the city and its inhabitants, and which would leave them free from any burdensome franchises or contract, which, if unwisely or improvidently entered into, might operate to require citizens to pay tribute to some private concern beyond the value of the services rendered for a period of years. Where strictly public works are constructed by the public, there is no necessity for casting any burden on the taxpayers beyond the necessary and actual cost of the service required.

The statute appears to us clearly to authorize the mayor and council to light the streets in such manner as in their judgment is most advisable. Similar statutes have been similarly construed and upheld by the courts of other states. (*City of Crawfordsville v. Braden*, 130 Ind. 149; *Gaslight and Coke Co. v. City of Hamilton*, 37 Fed. Rep. 832; id., 146

U. S. 258; *The State, ex rel., v. City of Hamilton*, 47 Ohio St. 52; *Ketchum v. City of Buffalo*, 14 N. Y. 356.) The case of *Green v. City of Cape May*, 41 N. J. Law, 45, goes much further, and holds that an authority to pass ordinances for the suppression and prevention of fires, and to raise money by taxation for supporting the fire department, carries with it implied power to purchase engines and apparatus.

It is unnecessary to consider the question discussed in the brief as to the general powers of the mayor and council, as the section of the statute under consideration confers specific power to do the things the plaintiff seeks to enjoin them from doing. It is also unnecessary to discuss any question as to the power of the council to involve the city in debt for the purpose of erecting the plant, as no such question is raised in the record, all averments of the petition except the execution of the contract between the city and the General Electric Company being denied by the answer. The judgment is affirmed.

All the Justices concurring.