CUMBERLAND GASLIGHT CO. v. WEST VIRGINIA & MARYLAND GAS CO.

(Circuit Court, D. Maryland. October 17, 1910.)

Gas (§ 7*)—Gas Companies—Rights Arising from Franchise.

Where, as in Maryland, the public policy of the state, as evidenced by years of legislation, is to permit, with the sanction of the municipal authorities, the freest possible competition in the use of the public streets for the laying of gas pipes, a gas company having such a franchise in a particular city is not entitled to recover damages at law against another company which, with the municipal consent, exercised a similar franchise, because the latter had failed to comply with some statutory requirement, especially when such franchise was exercised for several years, during which the state took no action in the matter.

[Ed. Note.—For other cases, see Gas, Dec. Dig. § 7.*]

Action by the Cumberland Gaslight Company against the West Virginia & Maryland Gas Company. On demurrer to declaration. Demurrer sustained.

Marbury & Gosnell and William C. Devecmon, for plaintiff.
Benjamin A. Richmond and Ferdinand Williams, for defendant.

ROSE, District Judge. The plaintiff is a corporation of Maryland; the defendant, a corporation of West Virginia.

The declaration says that the plaintiff was incorporated by the Legislature of Maryland (chapter 221, Acts 1853); that, under and by virtue of said act and the assent of the mayor and city council of Cumberland, the plaintiff became and was and is now vested with the exclusive franchise and right to lay pipes for the trans-

mission and distribution of gas in the streets, lanes, and alleys of the city of Cumberland; and that no other person or corporation has the right, under the laws of the state of Maryland, to use for such purpose said streets, lanes, or alleys or any of them. The declaration asserts that the plaintiff, from the time of its incorporation to the present time, has been engaged in the exercise of said franchise in the manufacture, distribution, and sale of gas to the city of Cumberland and its inhabitants for heating, lighting, cooking, and other purposes; that said franchise was a valuable one; and that, prior to the time of the wrongful acts of the defendant complained of, the business of manufacturing and selling gas in the city of Cumberland was a source of annual profit to the plaintiff and its stockholders. It says that on or about October 5, 1906, the defendant, without any lawful authority whatever, and without having received any right or franchise so to do from the state, dug up certain streets and alleys in the city of Cumberland and laid therein pipes for the distribution of natural gas, and thereupon engaged in the business of distributing natural gas through said pipes in the city of Cumberland for lighting, heating, cooking, and other purposes; and it thereby caused, and still is causing, a great number of the customers of the plaintiff to cease from taking gas for said purposes from the plaintiff. The plaintiff claims that the acts of the defendant have damaged it to the amount of $100,000. To this declaration the defendant demurred.

The act incorporating the plaintiff, viz., chapter 221 of the Acts of 1853, authorizes it to manufacture gas of any materials and to dispose of the same for lighting the city of Cumberland or the streets thereof, or the buildings, manufactories, or houses therein situated. To effect this object, the plaintiff is given power to lay pipes in and along any of the streets, lanes, and alleys of said city with the assent of the mayor and city council. The plaintiff concedes that the act does not purport to confer upon it any exclusive privileges. It says, however, that the Legislature has given to it the franchise to lay gas pipes in the streets of Cumberland, and not to any other corporation. It admits that the Legislature may, at any time, confer a like franchise upon any one else, but contends that, until the Legislature does so, its rights are exclusive.

It has been agreed that the court shall take judicial notice of the charter of the city of Cumberland and of the ordinance by which the mayor and city council of Cumberland consented to the defendant's laying its pipes in the streets of that city for the purpose of furnishing natural gas to the city and its inhabitants. The charter confers upon the municipal corporation the power to pass all such ordinances not contrary to the Constitution and laws of this state as it may deem necessary for the good government of the city, for the promotion and preservation of the city's property rights, for the prosperity, health, comfort, and convenience of the citizens of the city, visitors thereto, or sojourners therein, and for providing suitable lights upon the public streets. It is empowered to prohibit digging in such streets, alleys, or public places, or, in any way, disturbing or making holes in the surface thereof, to regulate the mak-

ing of private connections with sewers, gas, and water pipes, to compel the owners of property to bring such connections inside the curb of said streets before permanent improvement thereon, and to cause the streets, lanes, and alleys to be sidewalked, paved, graded, repaired, repaved, regraded, drained, or sewered.

The consent of the mayor and city council of Cumberland to the introduction of natural gas by the West Virginia & Maryland Gas Company, a West Virginia corporation, the predecessor in title of the defendant, was given by ordinance passed June 1, 1906. The ordinance says that the company is the owner of large and valuable gas fields situated in Lewis county, W. Va.; that it wishes to extend its mains for a distance of about 120 miles, and asks for permission to build a distributing plant and sell natural gas in Cumberland. The ordinance says that the mayor and city council "recognize the value of having such a corporation operating within the city of Cumberland," and "that the sale and manufacture of natural gas would largely increase the wealth and prosperity of said city, and contribute to its health and cleanliness." Permission, in the usual form, was given to the company and its assigns to lay its mains in the public streets and ways. By the terms of the ordinance, the franchises, rights, and privileges granted were limited to 25 years. The price to domestic consumers was to be uniform throughout the city and not to exceed 50 cents per thousand feet. The corporation was to be exempt from city taxes for a period of 10 years. In return for this exemption and the franchises and privileges granted, the gas company agreed to furnish the city of Cumberland sufficient gas to light its public buildings free of charge.

The plaintiff says the mayor and city council have no authority under their charter to pass any such ordinance or to confer any such privileges upon the defendant. It claims that it is in the position of one having a ferry or toll bridge franchise. The sovereign power may grant to any one else a like franchise; but, until such grant is made, the plaintiff has the right to prevent any unauthorized person from laying gas pipes in the public streets, precisely as the owner of a ferry or bridge franchise may, under like conditions, successfully object to the establishment of a competing bridge or ferry. This right, it contends, it may assert in equity by a bill for an injunction, or, as in the present case, at law, by a suit for damages.

For more than 450 years, the courts have enforced the right of the holder of a franchise for a ferry or a bridge to legal redress for or equitable protection from competition by any one who has not such franchise. Year Books, 22 Henry VI, 146; Patterson v. Wollmann, 5 N. D. 608, 67 N. W. 1040, 33 L. R. A. 536.

Despite the decision of the Supreme Court of Errors of Connecticut in Norwich Gaslight Company v. Norwich City Gas Company, 25 Conn. 19, it is well-settled law that the Legislature, in the absence of special constitutional restrictions, may grant the exclusive franchise to lay gas pipes in the streets of a particular city. Such franchise when accepted by the grantee becomes a contract between it and the state. The grantee may call upon the courts to restrain a would-be competitor from interfering with its monopoly right.

New Orleans v. Louisiana Light Company, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510.

Ever since the case of Proprietors of Charles River Bridge v. Proprietors of Warren Bridge, 11 Pet. 420, 9 L. Ed. 773, it has been equally well settled that one who claims an exclusive privilege must show that the Legislature intended to give it to him. The mere grant of a franchise to him does not preclude the Legislature from giving the same privilege to another.

To protect the holder of a ferry or bridge franchise from competition was at common law the established policy of the realm. Under the conditions then existing, there was no question of its wisdom. To many minds it now seems almost "unthinkable" that the public shall permit competition in the laying of gas pipes. Willcox v. Consolidated Gas Co., 212 U. S. 49, 29 Sup. Ct. 192, 53 L. Ed. 382. Other people believe that such competition is or may be for the public good. Chapter 55, Acts Md. 1910.

Whether such competition shall or shall not be permitted or even encouraged is a question to be answered by the legislative branch of the government. Except in so far as the Legislature may be restrained by the federal or state Constitution, it may do what it thinks best about such matters. The principle that the people are "the best judges of what is for their own interest is the foundation of our political institutions." Chief Justice Taney, Ohio Life Insurance & Trust Co. v. Debolt, 16 How. 416, 14 L. Ed. 997; New Orleans Gaslight Co. v. Louisiana Light Co., 115 U. S. 670, 6 Sup. Ct. 252, 29 L. Ed. 516.

At least as early as 1868, the General Assembly of Maryland made it plain that it did not wish to prevent competition in the supply of gas. The general incorporation act passed that year provided:

"That any gaslight corporation formed under this act shall have full power to manufacture and sell and furnish such quantities of gas as may be required in the city or town where the same may be located for lighting the streets and public and private buildings and for other purposes; and such corporation shall have the power to lay conductors for conducting gas through the streets, lanes, alleys and squares of said city or town under such reasonable rules and regulations as they may prescribe." Acts 1868, c. 471.

Under the provisions of that act any five persons could form a corporation. When formed, such corporation could lay gas pipes in the streets of any city or town with the sanction of the municipal authorities.

By Acts 1876, c. 349, gaslight companies were exempted from the obligation to secure the sanction of the municipal authorities before laying pipes in their streets. They were required to conform to such regulations as the municipality might make for the filling up and repaving of such streets after their pipes had been laid.

No further change was made in the general law of this state until 1910. In 1886 and in subsequent years, certain statutes were passed which prevented any new gas company from laying pipes in the streets of Baltimore city and under the public roads of some of the adjoining counties without having first obtained express legis-

lative sanction. But those acts were expressly limited to Baltimore city and had no relation to the city of Cumberland or to Alleghany county or to any of the counties not in the immediate vicinity of Baltimore city.

In 1910, more than three years after the defendant is alleged by the declaration to have laid its pipes in the streets of Cumberland, but some months before the institution of this suit, the Legislature of Maryland again amended the general incorporation law of the state in so far as it had reference to gas companies. By this amendment a gas company before it can lay pipes in the streets of any municipality must obtain consent of the municipal authorities. After this assent has been obtained, any corporation incorporated under the general law, the act provided,

—"shall have full power to manufacture artificial gas, and to sell and to furnish such quantities of gas, both natural and artificial, as may be required in any city, town or county of this state, in which, or adjoining which, the same may be located, for lighting the streets, roads and public or private buildings, or for other purposes, and such corporation is hereby authorized and empowered to lay conductors or pipes for the transmission of gas, both natural and artificial, in any city, town, or county, under the streets, squares, lanes, alleys and roads thereof, paved or unpaved, and to connect the same with any manufactory, public or private building, lamp or other structure or object." Acts 1910, c. 55.

There are analogies between a franchise to lay gas pipes and a franchise to keep a ferry. There are also differences. It may be a question whether the analogies or differences are more important.

It is certain that for nearly or quite 500 years the policy of England had been to discourage competition in ferryage. That policy was followed in the American colonies, and has been adhered to by most, if not all, of the states of the Union. For more than 40 years, Maryland has encouraged competition in supplying gas.

The plaintiff says this may be true, but, if true, is immaterial. It is legally authorized to lay pipes in the streets of Cumberland. It says the defendant is not. It argues that because it is, and the defendant is not, it is entitled to recover whatever damage it may have suffered by the diversion by the defendant of custom from it. It can cite authority for this contention.

New Jersey permitted gas companies to be formed under a general law. A corporation so organized was given power to lay pipes in the public streets of the town or city in which it was located, provided it first obtained the written consent of the municipal authorities. A corporation chartered by special act of the Legislature of New Jersey was expressly authorized to lay pipes and furnish gas to Jersey City, precisely as the plaintiff in this case was incorporated by act of the General Assembly of Maryland, and by such act was authorized to lay pipes and furnish gas in Cumberland. The New Jersey corporation sought to enjoin certain persons from laying gas pipes in the streets of Jersey City. Such persons claimed to be incorporated as a gas company under the general law and to have the required consent of the municipal authorities. The vice chancellor held that, upon such a bill, he could inquire into the validi-

ty of the incorporation of the defendants. The law under which they claimed to be acting required that there should be at least 13 incorporators. It provided that the articles of incorporation should not be filed until at least one-half of the entire capital stock had been subscribed, and 20 per centum paid thereon in good faith and in cash to the directors; nor until there was indorsed thereon or annexed thereto an affidavit subscribed to by at least seven of the directors that the amount of stock required had, in good faith, been subscribed and 20 per centum paid thereon in cash. Articles of association, with such affidavit attached, had been duly filed. Upon the proofs the vice chancellor declared himself satisfied that one of the 13 incorporators had not subscribed in good faith, and that there was an understanding that the check such incorporator had given for his subscription should be returned to him. Another incorporator who had subscribed for the largest part of the required half of the capital stock was, the vice chancellor found, unable to pay his subscription and never expected to pay it. In consequence of these findings, he decided that the defendants had not legally formed a corporation, and that the plaintiff had a right to have them enjoined from laying pipes in the streets of Jersey City, although the declared policy of the state was to permit corporations incorporated under the general law freely to compete with other gas companies. Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242.

In New Jersey, the statute showed that the Legislature wished to make sure that, before a gas company had begun business, it could furnish some guaranties of financial responsibility. It is true that these guaranties were such that they could be easily evaded, and there might be reasonable question as to their effectiveness, in any event, to secure the objects aimed at. In Maryland no such anxiety has been shown. Any one can form a gas company. No minimum amount of capital is prescribed. No definite proportion of its capital need be subscribed or paid in before it can begin business. It may be that these differences between the laws of New Jersey and Maryland are not very important. Except for them, there seems to be no question that the New Jersey case is "on all fours" with the one at bar, if it be true that the defendant has no legal right to lay gas pipes in the city streets.

Is the defendant using the streets of Cumberland without lawful authority? That use is admittedly with the consent of the city, but the plaintiff says that the city could not in 1906 have lawfully authorized any company, resident or nonresident, to lay pipes in its streets for the distribution of natural gas; and that neither then nor now could it lawfully empower a nonresident company to lay such pipes for the distribution of either artificial or natural gas. It is by no means clear that before the act of 1910 the municipalities of this state could not permit pipes to be laid in their streets for the distribution of natural gas. The Code provided (article 23, § 34) for the "formation of gas and electric light companies." It then declared (section 142) that any gas company formed under this article shall have full power to manufacture and sell and furnish

such quantity of gas as may be required in any city, etc.  I should hesitate to say that this means that a gas company cannot sell or furnish any gas which was not manufactured.  If such a construction is to be given to the statutory provisions, it would be because natural and artificial gas are in substance different things.  If they are different, how is the plaintiff's asserted monopoly to supply artificial gas infringed by the sale of natural gas?

The more serious contention is as to the power of the mayor and city council of Cumberland to permit foreign gas companies to lay pipes in the streets of that city.  The law of Maryland prescribes the way in which foreign corporations generally may acquire the right to do business in Maryland.  It is conceded that the defendant corporation has complied with the statutory requirements in this respect.  The plaintiff says, however, that such general provisions have no relation to corporations such as gas companies which must have street or road franchises before they can carry on business at all. Is it clear that the plaintiff is right?

At the time that the defendant corporation laid its pipes, the law of Maryland levied a franchise tax of 1½ per centum upon the annual gross receipts of all gas, among other, companies "incorporated under any general or special law of this state and doing business therein."  It provided further that:

"All provisions and requirements of this section shall be in force and applied to all corporations of a like nature to those above enumerated which are doing business in this state and are incorporated by or under the laws of any other state, district, territory or foreign country." Acts 1906, c. 712.

In 1908 the Legislature declared that every foreign corporation, except, among others, gas companies, "shall pay a certain franchise tax to the state," the amount of which was graded with reference to the amount of capital the corporation employs in Maryland.  Acts 1908, c. 240, § 70.  The classes of corporations excepted are the classes of corporations upon which the state levies its franchise tax in the form of a percentage of their gross receipts.

It would appear therefore that, in the view of the Legislature of Maryland, gas companies chartered by other states may do business in Maryland and become liable to the payment of a franchise tax thereto.

The defendant claims that the provisions of the charter of the city of Cumberland which empower it "to pass all such ordinances as it may deem necessary for the good government of the city, and the prosperity, health, comfort, and convenience of the citizens of the city, the visitors thereto or sojourners therein, * * * and for providing suitable lights upon the public streets," authorizes it to pass the ordinance under which the pipes belonging to the defendant company were laid and are now maintained.

The right to use the streets of a city for the purpose of laying pipes to convey gas is a franchise, and as such can only emanate directly or indirectly from the sovereign power of the state.  This franchise may be granted directly or indirectly by a municipal corporation if it be clothed with the power to make the grant.  Such

182 F.—43

power in the municipality must either be expressly granted or arise from the terms of the statute by implication so direct and necessary as to be clearly conferred. State v. Cincinnati Gas Company, 18 Ohio St. 262, cited with approval by the Court of Appeals of Maryland in Purnell v. McLane, 98 Md. 592, 56 Atl. 830.

The question whether such powers as those of the mayor and city council of Cumberland do, by necessary implication, authorize the grant of a franchise to lay gas pipes, has been variously answered by different courts. Ellinwood v. City of Reedsburg, 91 Wis. 131, 64 N. W. 885; Heilbron v. Mayor of Cuthbert, 96 Ga. 312, 23 S. E. 206; Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. 364; Fawcett v. Mt. Airy, 134 N. C. 125, 45 S. E. 1029, 63 L. R. A. 870, 101 Am. St. Rep. 825; City of Crawfordsville v. Braden, 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214; Bailey v. Philadelphia, 184 Pa. 594, 39 Atl. 494, 39 L. R. A. 837, 63 Am. St. Rep. 812.

I do not think it either necessary or expedient in this case to decide whether, as the law of Maryland now is, a foreign gas company can, even with the consent of the municipal authorities, lay pipes in the public streets; nor do I think it essential or desirable to express any opinion as to whether, if the general incorporation law were silent on the subject, the city was authorized by its charter to grant the franchise which it assumed to grant to the defendant.

Neither the state nor the city are represented in this case. It will be wise to refrain from passing upon their respective rights if, without doing so, justice can be done to the parties at the bar.

Where the public policy of a state contemplates that the use of the public streets shall be granted only by special acts of the Legislature, or shall be granted under such circumstances as to hold out to the owner or possessor of such a franchise a reasonable expectation that the law will keep him free from competition, then the holder of a franchise is in the same position as the holder of a franchise to keep a bridge or ferry. He may recover damages at law for unauthorized competition from one whose competition has diminished his profits; or equity will, at his instance, enjoin such competition altogether. Raritan & Delaware Bay R. Co. v. Delaware & Raritan Canal Company, 18 N. J. Eq. 546; Pennsylvania R. Co. v. National Ry. Co., 23 N. J. Eq. 445.

It seems to me, however, that it is going too far to hold, as was in effect held in Jersey City v. Dwight, supra, that where the public policy of the state is to permit, with the sanction of the municipal authorities, the freest possible competition in the use of the public streets for a particular purpose, such as the laying of gas pipes, that the holder or many holders of such a franchise in a particular city are entitled to recover damages at law against one who, with the municipal consent, exercises such a franchise without having complied with some statutory requirement.

The state can itself repress such usurpation. It is not to be questioned that individuals, in many circumstances, may set up the lack of authority of such a corporation to do things which injuriously

affect such individual's rights; but I do not believe that, where the general policy of the state is that of Maryland, the holder of a gas franchise has any such standing in court as is necessary to maintain the present action.

The allegation of the declaration in this case shows the extreme consequence which would necessarily flow if the true rule of law were otherwise. It alleges that four years ago the defendant laid those pipes in the streets of Cumberland with the consent of the municipal authorities; that the service the defendant corporation has given in that time to the city and people of Cumberland has been such as largely to destroy the plaintiff's business. That is to say, with the consent of the mayor and city council of Cumberland, the people of Cumberland have for years been extensively dealing with the defendant. There have been two sessions of the General Assembly of Maryland in the meanwhile, and four years in which the state officers could have taken steps to prevent the unlawful actions of the defendant. Yet the state has done nothing either through the executive or legislative branches of its government to show any dissatisfaction with the state of the gas situation in Cumberland.

Under these circumstances, I do not believe that the plaintiff can call upon the defendant to make good to it any sums that the plaintiff would have received had not the defendant gone into the gas business in Cumberland.

I will sustain the demurrer.