STATE, TO USE OF STANTON *v.* JUNKIN *et al.*

(Division B.   Jan. 28, 1935.   Suggestion of Error overruled March 11, 1935.)

[159 So. 107.   No. 31550.]

**Engle & Laub** and **Brandon & Brandon**, all of Natchez, for appellant.

Nichols & Huff, of Forest, for appellees.

C. F. Patterson, of Natchez, for appellees.

Ethridge, P. J., delivered the opinion of the court.

The appellant was plaintiff in the court below and brought suit against John R. Junkin and the other members of the board of supervisors of Adams county, and the sureties on their respective bonds, for the alleged cutting of timber growing upon lands owned by the appellant, in fee simple, with the exception of the right of the county to a highway running through said lands, alleging that her title extends to the center of said road

subject only to the use of the public thereover as a public road. She further alleged that the board of supervisors, by resolutions and orders adopted and entered upon its minutes, obtained from the state board of public welfare certain sums of money to provide work and relief for destitute and unemployed persons in Adams county, agreeing to expend same in accordance with the rules and regulations of the state board of public welfare, by employing large numbers of laborers to cut trees along the public roads of Adams county and properties adjoining and abutting upon said roads, and did agree amongst themselves that they had the right and authority to have these trees cut without obtaining the consent of the owners of the properties, and that each supervisor should have active charge of the work, and in making up the pay rolls for said labor in his district. That, pursuant to this agreement, the supervisors employed large numbers of laborers and proceeded to cut, mutilate, and destroy trees growing along said public roadways and on properties of private citizens abutting thereon, destroying the natural beauty of the abutting property, without right or authority, and without consent or permission first had and obtained from the owners of the property affected thereby, and despite objections made by citizens of Adams county, and despite advice that so to do was without right or authority at law. It was generally understood that the members of the board of supervisors either had (it was alleged) or were claiming authority by virtue of their said offices to go upon private property and cut and destroy trees growing thereon. It was further alleged that Hiram W. Campbell, one member of the board of supervisors in whose district the property of the appellant is located, acting or pretending to act under the color and official sanction of the office of a member of the board of supervisors, gave orders to certain laborers to go upon the land of the appellant, and that said laborers, under Hiram W. Campbell's direction, went up-

on the said lands and cut therefrom four hundred seventy trees, same being described in said bill, without the consent of the owner.

The declaration did not state affirmatively that they were cut from the lands of the plaintiff other than lands constituting the right of way.

Taking the declaration as a whole, it is manifest that the suit was for trees cut within the limits of the right of way on the highway. There is no specific allegation that any trees were cut upon any part of the land lying outside of the highway.

The plaintiff (appellant here) demanded the statutory penalty for cutting the trees, and their value, under the specific sections of the Code of 1930, and alleged that the board of supervisors were jointly and severally liable for said damages, and the sureties upon their official bonds were also liable. A copy of the bonds, and the application to the state board of public welfare, were made exhibits to the declaration, and judgment was demanded in the sum of five thousand three hundred sixty-two dollars.

The request of the board of supervisors for funds to the state board of public welfare recites that twenty-seven thousand five hundred ten dollars per month was needed to care for the destitute families, and the rules and regulations governing administration of state relief were made an exhibit to the declaration, which rules provided that before considering an application for relief funds, satisfactory evidence would be required that a city or county had made adequate effort to secure funds from public and private sources, and had failed to secure same.

The sureties on the bonds of the members of the board of supervisors, other than the district in which the work was performed, all demurred to the declaration, and the demurrer was sustained. The local member filed a plea of the general issue denying the allegations of the

bill, and the plaintiff declining to amend the bill, it was dismissed as to the sureties on the bonds and the supervisors other than the district in which the trees were cut.

As stated, the plaintiff was the owner of the land on either side of the public highway, and the suit is for timber cut within the right of way on the public highway. It is not alleged in the declaration that the timber was not used in the repair of the roads or for the improvement of the highway, nor is it alleged that it was not necessary or proper to clear the right of way, or to keep it in repair, to make the road more useful and practical. The declaration does not show what disposition was made of the timber. It merely shows that the board of supervisors entered upon the scheme of cutting the trees along the highway in order to assist in giving employment to the unemployed. The plaintiff's declaration proceeded upon the theory that the board of supervisors had no right to the timber along the highway within the right of way thereof without first having acquired the consent of the plaintiff, the theory being that the laying out of roads did not give the board of supervisors the right to cut timber on the highway before notice of their intention so to do. There is no contention that the highway was not properly established, nor is the width thereof stated in the declaration. This being true, we must treat the highway as being properly established. In Campbell v. Covington County, 161 Miss. 374, 137 So. 111, it was held that the title to soil and all profits thereof consistent with the existence of easement for highway remain in original owner, and the landowner has title, subject to the easement to land covered by the highway and all material within its boundaries, except that needed to build, repair, or maintain the road.

When a highway is established, the public acquires a right of way and the right to use all the material therein needed for its proper construction, and no subsequent proceedings are necessary because the original condemna-

tion or grant carries with it the right to use such materials for road purposes from time to time so as to keep the highway in proper condition, and in grading and widening it as the public travel requires. It is frequently necessary to remove timber from the right of way to give it the benefit of sun and wind to dry out the road, as well to use timber and other materials for the construction of causeways, dumps, and fills, or the cutting down of hills so as to make the road usable for the public requirements as these develop from time to time. It may be necessary, at times, to clear the entire right of way of timber for the purpose of building dumps between hills, or to increase the width of the road. In 13 C. J., p. 132, sec. 116, it is said: "The title to trees follows the fee ownership, so that when the abutter owns the fee to the highway he owns the trees on the part thereof adjoining his property, and also the shrubs, subject to the public use for the purpose for which the property was taken and incidental purposes, and to the right of the public authorities to remove them if they obstruct the way or interfere with travel thereon."

In 29 C. J. 544, sec. 260b, it is said: "Upon the laying out of a highway the public acquire not only the right of way, but also the powers and privileges incident to that right, among which is the right to keep the highway in proper repair. To accomplish this purpose the proper officers may do any act in the highway that is necessary or proper to make and keep the way safe and convenient for the public travel. They may raise or lower the surface, dig up the earth, cut down trees, and use the earth, stone and gravel within the limits of the highway in a reasonable and proper manner. It has been held that trees or timber growing on the land may be used for the purpose of building or repairing the road, but there is also authority to the contrary. According to some of the cases, soil may be taken from one part of the high-

way and used upon another part, or even upon a different highway which is within the jurisdiction of the same authorities, both highways being regarded as parts of one plan of public improvement, while in other cases it is stated that there is no right to remove soil from one part of the highway in order to improve the highway at another place, unless such removal is necessary for the proper construction or repair of the part from which it is removed, or unless the improvement of the highway to which it is removed is a part of the same general plan of improvement as that of the highway from which it is taken.''

In a note to Wright v. Austin, 101 Am. St. Rep. 97, at page 115, it is said that, ''when land is taken for a highway, the public acquires, as an incident to the easement, the right to use, in a reasonable manner, the soil, gravel and stone found within the limits of the way, for constructing the road and keeping it in repair. [Citing authorities.] And within reasonable bounds the public should have the right to remove and transport material from one point to another on the highway, regardless of the ownership of the adjoining lands. The use of the material should not be confined to the particular part of the road where it is found and taken from nor even to that particular highway. [Citing authorities.]'' On page 116 of 101 Am. St. Rep., it is said that ''it would seem clear that timber growing in a highway may, within reasonable bounds and under certain circumstances, be used in the construction and repair of the road. To quote from Felch v. Gilman, 22 Vt. 38: 'No doubt the fee of the land remains in the land holder; and he may maintain trespass, subject to such rights, as are acquired under the easement, which the public get. The public have simply a right of way, and the powers and privileges incident to that right. We think digging the soil and using the timber and other materials found within the limits

of the highway, in a reasonable manner, for the purpose of making and repairing the road, or bridges, are incident to the easement.' [Citing authorities.] The foregoing language, in our opinion, should not be taken without qualification. While, no doubt, the public may be justified in many cases in making use of timber growing in a highway for road purposes, still the right to such appropriation probably depends on the circumstances and exigencies of the case, such as the abundance, character, and value of the timber, and the urgency of the public needs.''

In the case of Chase v. City of Oshkosh, 81 Wis. 313, 51 N. W. 560, 15 L. R. A. 553, 29 Am. St. Rep. 898, it was held that, ''as against a lot-owner, though he holds the fee of the streets subject to the public easement therein, a city has an undoubted right to open and fit for use and travel a street over which the public easement extends to its entire width, and whether it shall be so opened and improved is a matter of discretion, to be determined by the public authorities to whom the charge and control of the public interests in and over such easements is committed, and with this discretion the courts will not ordinarily interfere.'' It was also held in that case that, ''shade-trees standing in a public street, near the line of the sidewalk, may be cut down and removed by the municipal officers in pursuance of the authority which the city possesses over its streets and sidewalks; and no action can be maintained by the owners of the trees on account thereof. Whether the trees are obstructions to travel, and ought to be removed to make the sidewalk reasonably safe therefor, is a matter within the quasi legislative discretion conferred on the common council of a municipality, when its charter gives such council power to prevent the encumbering of the sidewalks, and to control and regulate the streets, and to remove and abate every obstruction and encroachment thereon.''

In City of Crawfordsville v. Braden, 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214, it was held that "the discretion of municipal corporations, within the sphere of their powers, is not subject to judicial control, except in cases where fraud is shown, or where the power or discretion is being grossly abused, to the oppression of the citizen. The power to light the streets and public places of a city carries with it incidentally the further power to procure or furnish whatever is necessary for the production and dissemination of the light."

In City of Dubuque v. Maloney, 9 Iowa, 451, 74 Am. Dec. 358, it was said that: "A person whose duty it is to repair a road may lawfully do any act necessary to keep said road in condition to be used by the public, as cutting down trees, etc., but if he cuts a tree down for his own use, he is a trespasser. This rule applies to public corporations."

We think it is the law in this state that the public acquires the right to use the entire right of way of a highway for the public convenience or necessity, and that discretion is vested in the boards of supervisors as to county roads as to whether it is necessary or proper to open the entire right of way for travel at once, or whether it may become convenient or necessary to do so after the road has been opened. When the public acquires the right of way of a highway, they acquire all that is necessary or convenient for the public use, including trees, dirt, or other materials. This right is acquired by the law, and the board of supervisors is not required to serve notice upon the abutting property owners of this intention to cut trees for use on the highway. When the highway is abandoned, the timber rights will revert to the abutting owner unless the fee was conveyed to the county. It is true the owner may maintain an action against a private person, corporation, or other person, for taking timber or other material from a right of way, when it is

manifest that the timber or other material is not needed for public purposes. The county, however, or the public authority, may take therefrom such timber as may be needful for the convenience of the highway, and such right is paramount in the county during the existence of the highway.

In many sections of this state highways must be causewayed or repaired by using poles and brush under the surface to prevent vehicles from bogging down, and to prevent the public highway from becoming impassable by reason of the softening of the earth, and in many sections they use dirt and other materials with which to repair the highways. In many cases it is to the advantage of public highways to have the right of way free of timber and trees so that the sun and wind may hasten the drying out of the roads after rains and floods. Full jurisdiction over ferries, roads, and bridges is vested in the boards of supervisors, and while their discretion is, and may be, regulated by law, a large discretion must be left to them to determine what the public convenience requires.

We are of the opinion, in the case at bar, that the members of the board of supervisors were acting in their official capacity under the facts in this record, and there is nothing in the declaration to show that they abused their discretion, or did any act which would subject them and their bondsmen to liability. The pleadings are construed most strongly against the pleader, and it devolves upon the pleader to state the cause of action, and, in this case, if there was any cutting of timber outside the right of way, that fact should have been stated, and the pleadings should have shown the number and value of the trees cut outside the right of way. If timber cut within the right of way was used for other purposes than the highway construction and repair, that fact should have been stated with definiteness and certainty, together with the value of the timber so removed from the highway.

There is nothing in the declaration, construing it most strongly against the pleader, to impose any liability upon the board of supervisors or their bondsmen, and the judgment of the court below will, therefore, be affirmed.

Affirmed.